489 P.2d 283

**The STATE of Arizona, Appellee,**

v.

**Eddie COHEN and Peter T. Bollander, Appellants.**

**No. 2 CA–CR 238.**

Court of Appeals of Arizona, Division 2.

Oct. 7, 1971.

Rehearing Denied Nov. 4, 1971.

Review Denied Dec. 14, 1971.

Gary K. Nelson, Atty. Gen., by William E. Kimble, Sp. Asst. Atty. Gen., Tucson, for appellee.

Roger C. Wolf, Tucson, for appellants.

HOWARD, judge.

Appellants, hereinafter referred to as defendants, were found to be in contempt of court for willfully violating a Preliminary Injunction issued by the Superior Court of Pima County which provided, *inter alia:*

"NOW THEREFORE, IT IS ORDERED that you and each and all of you and those acting in concert with you are hereby immediately enjoined, pending a final disposition of this case on the merits, from interfering in any manner so as to unreasonably impede or interfere with the orderly administration and function of the University of Arizona and the buildings and/or grounds located thereon, and more particularly to refrain from:

1. Violent or disorderly conduct;

2. Injury to person or persons;

3. Injury to or destruction of property;

4. Interference with free access ingress or egress of anyone lawfully upon said property;

5. Seizure or exercise of unpermitted control of properties of the University of Arizona;

6. Conduct disruptive to or which interferes with scheduled educational functions at the University;

7. Interference with the safety and/or welfare of the public or others properly using the buildings and/or grounds of the University."

Defendant Cohen was sentenced to serve four months in the county jail and defendant Bollander three months.[1] Both defendants appeal from the judgment and sentences.

On May 5, 1970, at a time when college campuses across the nation were in turmoil as a result of United States involvement in Cambodia and the Kent State killings, the State of Arizona, on behalf of the University of Arizona, sought an injunction to enjoin and restrain certain named defendants and all those acting in concert with them from occupying or threatening to occupy buildings and grounds at the University. At the time some 150 to 200 students had occupied the building known as Old Main, which houses both Army and Air Force R.O.T.C. departments at the University, and had indicated that they would not leave the building that night. A hearing was held on the evening of May 5, before Judge Fenton in Superior Court and following the hearing, at approximately 11:00 p.m., Judge Fenton issued a Temporary Restraining Order which directed that the students were enjoined and restrained from occupying Old Main or other buildings on campus and that such order would remain in effect until May 8, 1970, when the court would hold a show cause hearing to determine whether "the restraining order would become permanent pending final disposition of the matter on the merits." Old Main was cleared later that evening.

On May 8, 1970, the show cause hearing was held after which the court issued a Preliminary Injunction which, by its terms, enjoined the named defendants and all persons acting in concert with them, or who received notice of the order, from interfering in any manner so as to unreasonably impede or interfere with the orderly administration and function of the University of Arizona and the buildings and/or grounds located thereon.

On May 15, 1970, a Petition for Citation for Contempt and Order to Show Cause was filed with the Superior Court based upon the sworn affidavit of Marvin D. Johnson, Vice-President of the University of Arizona, which alleged certain acts on the part of defendants Cohen and Bollander which affiant claimed violated the Preliminary Injunction of May 8, 1970.

After a five day trial, the court entered a Decision and Order which included the following:

"Among other things, the defendants openly defied reasonable requests from University officials including an attempt to bring in a second 'rock band' after a 10:30 curfew had been imposed; participated in mass marching and chanting activities on May 11, 1970, which march resulted in an interference with classes and a temporary physical 'take over' of the Administration building by filling the entire lobby with demonstrators, sitting on the floor, beating on countertops, banging sticks on the floor, etc; actions and words obviously designed to incite the large, noisy and unruly crowds, and lit gasoline soaked torches in a large crowd, near burnable property."

The court's order found both defendants to be in contempt for violating the Preliminary Injunction of May 8. Defendants present the following questions for review:

"1. Did the failure of the trial court specifically to make findings of fact as to each defendant render the judgment insufficient to support conviction?

2. Does the evidence support a finding of contempt on the part of appellants as a matter of law?

---

1. Bollander was never a student at the University. Cohen had enrolled in swimming, speech and design. He dropped the speech and design classes and finally the swimming class when he found a friend with a better pool.

3. Did the trial court's failure to indicate whether the proceeding was civil or criminal contempt constitute reversible error?

4. Was the failure of the plaintiff to pray for a temporary injunction a fatal defect in the jurisdiction of the court to enter a judgment of contempt of the temporary injunction?"

## FAILURE TO MAKE FINDINGS OF FACT

■ While contending that the proceedings in this case were governed by A.R.S. § 12–861 through § 12–863, defendants likewise contend that it was incumbent upon the trial court to make findings of fact or otherwise specify the facts upon which each defendant was found to be in contempt. In support of this contention, defendants cite several cases, none of which are in point.

Article 4, Chapter 7 of Title 12, Arizona Revised Statutes, deals with three distinctive types of contempt. A.R.S. §§ 12–861 through 12–863, set forth the procedure to be followed in those cases where a person willfully disobeys a lawful writ, process, order or judgment of a superior court by doing an act or thing therein or thereby forbidden which act also constitutes a criminal offense. Under the latter statutes procedure is set forth regarding the notice to be given to the alleged contemnor and the manner in which the alleged contempt is to be heard. Under A.R.S. § 12–863, the contemnor is given a trial and is entitled to a jury upon demand. Furthermore, the trial is to be conducted in the same manner as a trial for a misdemeanor. A.R.S. § 12–863 also provides for an appeal as in criminal cases. Nowhere in A.R.S. § 12–863 do we find any requirement that there be findings of fact or that there be a judgment setting forth facts of contempt. A.R.S. § 12–863, subsec. B simply provides that "if the person allegedly in contempt is found guilty, judgment shall be entered * * *."

A.R.S. § 12–864 provides that direct contempts and constructive contempts may be punished in conformity to the practice and the usage of the common law. Because direct contempts and constructive contempts are handled under the common law in a summary manner (constructive contempts in a little less summary manner, but still nevertheless summary), there is a requirement, for the purposes of appellate review, that there appear somewhere in the record a recitation of the facts constituting the contempt. This is the rule enunciated in Weiss v. Superior Court, 106 Ariz. 577, 480 P.2d 3 (1971), a direct contempt case, and Ellison v. Mummert, 105 Ariz. 46, 459 P.2d 306 (1969), a constructive contempt case.

Although the trial judge made several remarks during the course of the trial indicating that he thought he was trying a civil contempt, it is clear that the affidavit of contempt charged the defendants with the crimes of trespassing and disorderly conduct thereby requiring trial pursuant to A.R.S. § 12–863. It is equally clear that although the trial judge was laboring under a misapprehension as to the nature of the proceeding, all the procedural safeguards and requirements of A.R.S. § 12–862 and § 12–863 were met.

## DOES THE EVIDENCE SUPPORT A FINDING OF GUILTY?

■ Defendant Cohen readily admitted on the witness stand the temporary take-over of the administration building. He further candidly admitted that the take-over was intended to be disruptive.

Defendant Bollander admitted that he lighted a torch. This occurred after he was warned by university officials, campus leaders, and other state officials that this would be a violation of the Preliminary Injunction. In spite of these warnings, defendant Bollander lighted a gasoline-soaked torch.

We do not agree with defendants' contention that the lighting of the torch did not constitute a violation of the restraining order. The events on the campus of the University of Arizona took place shortly

after the tragedy of Kent State where several students were killed when the National Guard attempted to put down a student demonstration. R.O.T.C. buildings across the nation had been the subject of destruction by arson or explosives by dissident forces on the campus. The R.O.T.C. facilities on the campus of the University of Arizona are located in a building known as Old Main, directly across from where the torch lighting took place. This building is the oldest building on the campus of the University of Arizona and is highly combustible. It is the same building which had previously been taken over on May 5, 1970. There were approximately five hundred to six hundred persons in the area where the torch was lighted. In the context of all that had previously occurred on the campus and in the light of current events we believe that the lighting of the torch, contrary to the express orders of the University, interfered with the safety and welfare of the public using the buildings and grounds of the University.

## CIVIL OR CRIMINAL CONTEMPT

Defendants' third contention is that the trial court, in failing to indicate whether the proceedings against them were for civil or criminal contempt, committed reversible error in that defendants did not know whether they could demand a jury trial or whether the proof required was by mere preponderance of the evidence or by proof beyond a reasonable doubt.

There can be no doubt that, under any standard, defendants were on trial for criminal rather than civil contempts. While there are cases wherein the contempt partakes of both civil and criminal contempt, it is generally the rule that criminal contempts are acts which obstruct the administration of justice or tend to bring the court into disrepute, as distinguished from civil contempt which consists of failing to do something which the contemnor is ordered by the court to do for the benefit or advantage of another party to the proceeding. Ong Hing v. Thurston, 101 Ariz. 92, 416 P.2d 416

(1966); Van Dyke v. Superior Court, 24 Ariz. 508, 211 P. 576 (1922). Contempts of court for which punishment is inflicted for the primary purpose of vindicating public authority are denominated criminal, while those in which the enforcement of civil rights and remedies is the ultimate object of the punishment are denominated civil contempts. Shillitani v. United States, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). Thus, when the contempt orders are remedial the contempt is civil rather than criminal. For example, if the act of disobedience consists of refusing to do what has been ordered, i. e., "answer the questions" and not in doing what had been prohibited, the contempt is civil and not criminal. Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911). And when the petitioners carry "the keys of their prison in their own pockets," In re Nevitt, 117 F. 448, 461 (8th Cir. 1902), the action is essentially a civil remedy designed for the benefit of other parties. A criminal contempt is characterized by imposition of an unconditional sentence for punishment or deterrence. See Cheff v. Schnackenberg, 384 U.S. 373, 377, 86 S.Ct. 1523, 16 L.Ed.2d 629, 632 (1966). It is also true that for one to be judged guilty of criminal contempt it must be found that defendant acted in a willful manner. In re D. I. Operating Co., 240 F.Supp. 672 (D. Nev.1965); Little v. Superior Court, 260 Cal.App.2d 311, 67 Cal.Rptr. 77 (1968); Duemling v. Fort Wayne Community Concerts, Inc., 243 Ind. 521, 188 N.E.2d 274 (1963); Langford v. Langford, 253 Miss. 483, 176 So.2d 266 (1965). Furthermore, the burden of proof, both as to the acts committed and the necessary intent, is that of proof beyond a reasonable doubt in criminal contempt. Gibson v. Gibson, 15 Cal.App.3d 943, 93 Cal.Rptr. 617 (1971); Abbott v. Abbott, 129 Ill.App.2d 96, 262 N.E.2d 502 (1970); Winter v. Crowley, 245 Md. 313, 226 A.2d 304 (1967); In re Buehrer, 50 N.J. 501, 236 A.2d 592 (1967).

Defendants complain that they were not given a jury trial to which they are en-

titled under A.R.S. § 12–863. A short answer is that under the latter statute one is not entitled to a jury trial unless he demands the same. Defendants in this case were represented by counsel throughout the proceedings below. Their counsel did not demand the jury trial and thus waived the same.

Defendants further contend that since the court did not announce whether the proceedings were civil or criminal proceedings, there is no way to tell whether the trial court used the proper burden of proof in arriving at a verdict. As we have previously commented, both defendants readily admitted acts which constituted a violation of the injunction. In fact, the defense below consisted almost entirely not in a denial of the facts, but rather in a political and First Amendment justification of their conduct. The whole tenor of the memorandum decision filed by the trial court in this case indicates that the court had no doubts as to the guilt of the defendants.

## THE PRAYER FOR INJUNCTIVE RELIEF

 Defendants' final contention is that the Superior Court was without jurisdiction to grant a preliminary injunction as plaintiff's complaint only contained a prayer for relief in the form of a temporary restraining order and an injunction, i. e., it did not specifically contain a prayer for a preliminary injunction. In support of this position they cite dicta from Wall v. Superior Court, 53 Ariz. 344, 89 P.2d 624 (1939), to the effect that "no greater relief can be given than is asked for in the pleadings." Such a rule would ignore the intent, purpose and language of Rule 54(d), Rules of Civil Procedure, 16 A.R.S. which provides that the court "shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." See England v. Valley National Bank, 94 Ariz. 267, 383 P.2d 183 (1963); Keystone Copper Mining Co. v.

Miller, 63 Ariz. 544, 164 P.2d 603 (1945). The evidence clearly shows that the State was entitled to a preliminary injunction on May 8, and furthermore, it should be pointed out that the relief granted was, in essence, that requested except that it was not permanent in nature.

Affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.