760 P.2d 1064

**STATE of Arizona, Appellee,**

v.

**James Alan ARNETT, Appellant.**

**No. CR–86–0349–PC.**

Supreme Court of Arizona,
In Banc.

July 19, 1988.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Diane M. Ramsey, Asst. Attys. Gen., Phoenix, for appellee.

John J. Trebon, Flagstaff, for appellant.

CAMERON, Justice.

## I. JURISDICTION

We granted defendant, James Alan Arnett's, petition for review of the trial court's denial of his petition for post-conviction relief. Ariz.R.Crim.P. 32.4. We have jurisdiction pursuant to Ariz.Const.Art. 6, § 5(3), A.R.S. § 13–4239 and Ariz.R.Crim.P. 32.9(c).

## II. ISSUES

We address the following issues on review:

A. Should defendant's conviction of first degree murder, if based on the commission of a robbery, be set aside because he was neither charged with killing in the commission of a robbery nor with robbery itself?

B. May a conviction for a single prior crime be used as two statutory aggravating factors?

C. Did the trial court's exclusion of psychiatric testimony on the question of premeditation deny defendant the right to present a defense in violation of the sixth and fourteenth amendments to the United States Constitution?

## III. FACTS

During the first week of February, 1976, defendant was staying with Victor Tremblay at Tremblay's residence in Van Nuys, California. On the evening of 6 February 1976, Tremblay returned home, laid his wallet and keys on the kitchen table, and fell asleep in the living room. Sometime during the night, defendant took the wallet and keys and left the residence with Tremblay's car, a gray Ford Granada. Tremblay's rifle, a Universal .30 caliber M–1 carbine, was in the car. On 8 February, defendant abandoned the car in northwestern Arizona, took the carbine and some backpacking equipment, and began walking cross-country. On the evening of 9 February, defendant came upon a construction site located approximately 18 miles northwest of Lake Havasu City, Arizona, on

state highway 95. Waiting until workmen left for the day, he approached the site and looked for food. He spent the night there in an abandoned camper truck shell. Sometime after defendant settled into the camper shell, Elmer James Clary arrived at the construction site in his International pickup truck-camper. Clary also spent the night at the construction site in his camper.

Before daylight of the next morning, 10 February, defendant approached Clary and asked to buy some food. Clary replied that he had none to sell. Defendant then asked for a ride into any nearby town, and Clary said he did not have room for a passenger. Defendant then offered to trade jewelry for food, and Clary expressed interest in the trade. Defendant claimed that he then returned to a small shack where he had stored his backpack and the carbine. Defendant intended to get the carbine to help him "steal" Clary's truck. Unexpectedly, Clary followed appellant to the shack, and in defendant's words:

> ... I didn't know that he was going to do that—and we came back to the shack and I was at my backpack, I pulled the rifle [carbine] out and there was a short pause and I just let it up and I started shooting and I later learned that I shot him five times.

Clary had been standing just outside the doorway of the shack at the time of the shooting, and defendant pulled him inside the shed from where he had fallen to the ground. Defendant went through Clary's pockets, looking for the pickup truck keys, but then he realized it was already running. Defendant then loaded the backpack and the carbine in Clary's pickup truck and drove to California.

Upon reaching Bakersfield, defendant abandoned the truck and traveled by bus to Oakland. On 18 February, he left Oakland and began traveling north on foot. He was apprehended in Richmond, California during that night and taken to jail at the Richmond Hall of Justice. Defendant was initially arrested for a local burglary, and then awaited extradition to Arizona on the murder charge. On 25 February while in the Richmond City Jail, defendant made a detailed confession to Detective Donald Collier of the Richmond City Police Department regarding the shooting of Elmer James Clary. In the confession, defendant stated:

> *Defendant:* I helped him get his truck started because it was cold and he left it running and we were talking. So I offered to sell him some jewelry for some food, and he wanted to see the jewelry, so I went into my backpack and *what I had intended on doing was taking the rifle and stealing his truck.* (Emphasis added.)

A construction worker discovered Clary's body in the shack on the morning of 10 February. Officers of the Mohave County Sheriff's Department began arriving at the scene within 45 minutes and "roped it off" to preserve any possible evidence. Medical testimony established that the victim had received five gunshot wounds, any of which could have been fatal. Ballistics analysis revealed that three "bullets" or "bullet fragments" extracted from the body of the victim had been fired by the Universal carbine recovered from defendant when he was arrested. Expended "cartridge cases" found around Clary's body at the construction site also matched the carbine. Fingerprint analysis disclosed defendant's prints on several items within Clary's abandoned pickup truck in Bakersfield. Footprints discovered around the construction site on the morning of 10 February matched a pair of boots which had been worn by defendant at the time of his arrest.

Defendant was convicted of first degree murder and was sentenced to death on 10 September 1976. The trial court found aggravating circumstances as authorized by A.R.S. § 13–454(E)(1) (prior conviction punishable by life imprisonment) and § 13–454(E)(2) (prior conviction for crime of violence). This court affirmed the conviction and death sentence in *State v. Arnett*, 119 Ariz. 38, 579 P.2d 542 (1978) [*Arnett I*]. Defendant was resentenced to death following this court's decision in *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied*, 440 U.S. 924, 99 S.Ct.

1254, 59 L.Ed.2d 478 (1979). This court affirmed the resentencing in *State v. Arnett,* 125 Ariz. 201, 608 P.2d 778 (1980) [*Arnett II*].

## IV. QUESTIONS PRESENTED

A. SHOULD DEFENDANT'S CONVICTION FOR FIRST DEGREE MURDER, IF BASED ON THE COMMISSION OF A ROBBERY, BE SET ASIDE BECAUSE HE WAS NEITHER CHARGED WITH KILLING IN THE COMMISSION OF A ROBBERY NOR WITH ROBBERY ITSELF?

Defendant was charged with:

Count one: Murder in the first degree, a felony. On or about the 10th day of February, 1976, said defendant, JIM ALAN ARNETT, aka JIMMIE ALLEN ARNETT, aka JIM CLAY, aka JIM FARNER, committed murder in the first degree, to-wit: by shooting Elmer James Clary with a .30 calibre "Universal Carbine Serial # 321761" at or near Old West Town, milepost 197.5, Arizona Highway 95, in violation of Arizona Revised Statutes 13–451, 13–452, as amended and 13–453, as amended.

He was also charged in count two with grand theft auto. The trial court, however, dismissed this count after the jury was impaneled. Defendant was not charged with robbery.

Defendant claims that the indictment failed to provide him with notice that he would have to defend against a felony murder charge. We disagree.

At common law it was not necessary to charge in an indictment for murder that the murder was committed in the perpetration of another crime, in order to introduce proof showing that a felony was attempted in committing it; it was sufficient to charge murder in the common form, and then, upon proof that it was committed in the perpetration of a felony, malice, deliberation, and premeditation were implied.

*Blake v. Morford,* 563 F.2d 248, 251 n. 3 (6th Cir.1977), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978) (quoting *Sullivan v. State,* 173 Tenn. 475, 481–82, 121 S.W.2d 535, 537 (1938)).

Arizona law only requires that the indictment be a plain, concise statement of the facts sufficiently definite to inform the defendant of the offense charged. Ariz.R. Crim.P. 13.2. The indictment must state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Ariz.R.Crim.P. 13.2. The indictment in this case satisfied these requirements. There is no requirement that the defendant receive notice of how the State will prove his responsibility for the alleged offense. *State v. Tison,* 129 Ariz. 526, 538, 633 P.2d 335, 347 (1981), *cert. denied,* 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982).

Other jurisdictions share this view. *See Averhardt v. State,* 470 N.E.2d 666, 693 (Ind.1984), *cert. denied,* 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 323 (1985) (defendant argued that the lack of an indictment for robbery as a separate offense indicated that the killing was not in the commission of a robbery, but the court held there was no need for the State to charge the underlying felony in order to prosecute for felony murder); *Commonwealth v. Bastone,* 466 Pa. 548, 553–54, 353 A.2d 827, 830 (1976) (State is not precluded from proving that the murder was committed during the perpetration of a robbery, even though the robbery is not mentioned in the indictment); *Ross v. State,* 308 Md. 377, 344, 519 A.2d 735, 738 (1987) (the charging document did not have to inform the accused of the specific theory on which the State would rely); *State v. Johnson,* 661 S.W.2d 854, 860 (Tenn.1983), *aff'd,* 698 S.W.2d 631 (Tenn. 1985), *cert. denied,* 476 U.S. 1130, 106 S.Ct. 1998, 90 L.Ed.2d 679 (1986) (specification of felony in first degree murder indictment is unnecessary).

We note also regarding the issue of notice that, on the first day of trial, defense counsel presented a motion in limine to prevent the State from introducing any evidence that any robbery was committed of the victim.

*Mr. Bair* [defense counsel]: Also, Your Honor, I would also make a motion in limine to prevent the State from introducing any evidence that any robbery was committed of the victim.

*The Court*: Gentlemen.

*Mr. Birkemeier* [prosecutor]: Okay. We have a statement of Arnett that he went through the pockets of the victim.

*The Court*: What's that to do with a felony murder, Mr. Bair?

*Mr. Bair*: The issue I'm concerned with here is, I don't know that the State intends at this point to show, that he committed first degree murder because it was premeditated, willful and deliberate, or that he claims he did it because it falls within the purview of first degree murder.

Now, the only possible one of any relevance, and I submit it wasn't charged and I don't want them now at this point trying to make a case by eliciting evidence that there may have been some type of robbery committed.

*Mr. Birkemeier*: It doesn't have to be charged, Your Honor, would be my response to the robbery.

Later, in soliciting oral argument from counsel regarding the motion in limine, the court asked:

*The Court*: ... As to the issue of evidence, a robbery in connection with the— do you have any other argumentative cases you want to submit relative to that issue?

*Mr. Crismon* [prosecutor]: That's part of the crime, Your Honor. Anything to do with the commission of the crime is admissible at that time. The fact that he may have been robbing the victim or may have intended to rob the victim is certainly material and relevant for consideration by the jury. *We do not have to disclose at this time or at any time the theory on which we are going.* Murder, including the felony murder rule is included in the open charge of murder. I don't have that case, but I can obtain the case if the court is concerned with it. It's about three months old. Basically, that's all we have on it.

*The Court*: Mr. Bair, anything further?

The Motion in Limine regarding evidence of a robbery or related offense which might or may fit into the purview of the felony murder rule is denied. (Emphasis added).

We find that the evidence before the grand jury, the defendant's confession, and other matters disclosed to defendant made it apparent that robbery felony murder was a probable theory of prosecution in this case.

█ The defendant does not claim surprise or lack of adequate time for preparation for trial as a result of the failure to specifically designate which of the possible theories of first degree murder were being relied on. Defendant's motion in limine on the first day of trial confirms his awareness of evidence which could support the commission of robbery. After the court denied the motion in limine, defendant did not request a continuance of the trial to either obtain evidence to counter the robbery theory, or to change his theory of defense. Nor did defendant allege any prejudice as a result of the lack of notice, such as not being able to testify without jeopardizing his defense. *See State v. Gray*, 122 Ariz. 445, 449–450, 595 P.2d 990, 994–95 (1979) (Gordon J., dissenting). Moreover, defendant's counsel adequately rebutted the robbery allegation during closing arguments. In view of the evidence disclosing a possible robbery theory, and an absence of prejudice, we believe it was not error to refuse to require the State to elect which theory of first degree murder was being relied on under A.R.S. § 13–452.

█ There is only one crime of first degree murder. Felony murder is not a "lesser degree" of first degree murder. Felony murder and premeditated murder are merely two forms of the same crime: first degree murder. *State v. Hallman*, 137 Ariz. 31, 38, 668 P.2d 874, 881 (1983); *State v. Encinas*, 132 Ariz. 493, 496, 647 P.2d 624, 627 (1982). This protects the defendant against double jeopardy.

Because murder is a single offense, the State is ordinarily required to pro-

ceed upon all available theories in a single prosecution, and it may not bring seriatim prosecutions for the same offense by alleging separate legal theories. *Ross*, 308 Md. at 346, 519 A.2d at 739.

Admittedly, we do not know which of the three theories offered by the State the jury used to convict the defendant. The first theory was that the murder was premeditated and deliberate. The second was that the defendant had hid in the shed and was "lying in wait," and when the victim approached, he shot him. The third theory was that the defendant killed the victim in the course of robbery. It is not necessary to know which of the three theories the jury relied upon in reaching its decision nor whether the jury relied on only one or on more than one. The defendant is entitled to a unanimous jury verdict on whether murder has been committed. *State v. Counterman*, 8 Ariz.App. 526, 531, 448 P.2d 96, 101 (1968). The defendant is not, however, entitled to a unanimous verdict on the precise manner in which the act was committed. *State v. Emery*, 141 Ariz. 549, 552, 688 P.2d 175, 178 (1984); *State v. Berndt*, 138 Ariz. 41, 45, 672 P.2d 1311, 1315 (1983); *State v. Gillies*, 135 Ariz. 500, 510, 662 P.2d 1007, 1017 (1983), *cert. denied*, 470 U.S. 1059, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985); *State v. Encinas*, 132 Ariz. 493, 496, 647 P.2d 624, 627 (1982).

The jury could reasonably have found that the defendant was guilty of first degree murder on any one of the three theories offered by the State. Because the verdict need not specify under which theory the defendant was convicted, and because we find ample evidence to support each theory, we affirm defendant's conviction of first degree murder.

## B. MAY A CONVICTION FOR A SINGLE PRIOR CRIME BE USED AS TWO STATUTORY AGGRAVATING FACTORS?

At the first sentencing hearing, aggravating and mitigating circumstances were considered. The trial court specifically found:

(1) appellant had been previously convicted of an offense for which under Arizona Law a sentence of life imprisonment or death was imposable and

(2) appellant had been previously convicted of a felony involving the use or threat of violence on another person, thus establishing the aggravating circumstances set forth in A.R.S.§ 13–454(E)(1) and (2).[1]

Both of these findings by the trial judge were based on evidence of a prior California conviction for "the crime of lewd and lascivious acts upon a child under the age of 14 years".

*Arnett I*, 119 Ariz. 38, at 41, 579 P.2d 542, at 545 (1978).

The trial judge found no mitigating circumstances and sentenced defendant to death. On appeal, defendant claimed that the California crime was not within the purview of the type of violent crime to be used to substantiate the imposition of the death penalty.

We upheld the trial court's ruling in finding that this was the type of crime that could be considered as an aggravating circumstance in imposing the death penalty, and upheld the judgment and sentence of the trial court. *Arnett I*, 119 Ariz. at 51, 579 P.2d at 555.

Later, pursuant to *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Bell v. Ohio*, 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978), and *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied*, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979), the defendant was resentenced, at which time he was allowed to present mitigating circumstances in addition to those in the statute.

At the resentencing, the court found:

I have considered the entire file and all matters which might weigh in your favor in mitigation. I incorporate all findings and conclusions made at your sentencing on September 10th, 1976 as they relate to aggravating circumstances, and I find

---

1. Prior to the 1978 Revised Criminal Code, Arizona's death penalty was found at A.R.S.

§ 13–454. Arizona's present death penalty is found at A.R.S. § 13–703 (Supp.1983).

that A.R.S. 13–454(E)(1) and (2) are present; that you have been convicted of another offense in the United States for which, under Arizona law, a sentence of life imprisonment was imposable, and that you have been previously convicted of a felony in the United States involving the use of violence on another person.

On appeal from the resentencing, we reviewed the hearing to ensure that the trial court took into consideration every potential mitigating circumstance. We found:

It is apparent that the court considered all matters presented in mitigation and did not find them sufficiently substantial to call for leniency. Upon an independent review of the record, *Richmond, supra,* we agree with the sentence imposed.

*Arnett II,* 125 Ariz. at 204, 608 P.2d at 781. We then reaffirmed defendant's conviction on appeal.

Defendant now contends that using the one California conviction to establish two aggravating circumstances violates the eighth and fourteenth amendments to the United States Constitution. We have stated:

We hold that as a matter of law a robbery conviction constitutes an aggravating circumstance within the meaning of A.R.S. § 13–703(F)(2). On remand, the defendant's 1965 robbery conviction if proved by the state, may properly constitute two aggravating circumstances, A.R.S. §§ 13–703(F)(1) and (2). However, in its balancing of factors, the trial court may only weigh aggravating circumstances arising out of the 1965 robbery once so as to avoid any possibility of double punishment.

*State v. Tittle,* 147 Ariz. 339, 345, 710 P.2d 449, 455 (1985).

Even if, as the record indicates, the trial court found two aggravating circumstances arising out of a conviction for one crime, we need not set aside the death sentence. The trial court knew it was dealing with a single act when it found at least one aggravating circumstance. As we recently stated:

In Arizona, the trial court *must* impose a sentence of death if it finds the existence of one statutory aggravating factor and does not find the existence of any mitigating factor (or one or more mitigating circumstances substantial enough to call for leniency).

*State v. Beaty,* 158 Ariz. 232, 246–247, 762 P.2d 519, 533–534 (1988).

 Defendant's single prior conviction is an aggravating circumstance. The death penalty was properly applied because both the trial court and this court can find no mitigating circumstances which would call for leniency. *Tittle,* 147 Ariz. at 343, 710 P.2d at 453. We find no error.

## C. DID THE TRIAL COURT'S EXCLUSION OF PSYCHIATRIC TESTIMONY ON THE QUESTION OF PREMEDITATION DENY DEFENDANT THE RIGHT TO PRESENT A DEFENSE IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION?

During defendant's offer of proof on the admissibility of the expert psychiatric testimony, Dr. Harrison Baker, a psychiatrist testified:

Q. [*By Mr. Bair, defense counsel*]: Did you then form any opinions in this case as to whether or not this crime had been committed by Mr. Arnett with premeditation?

A. [*By Dr. Baker*]: That's really a question I suppose I have to answer yes, but the following answer is going to be a "yes but", type of thing.

Q. That's all right. You did form an opinion?

A. Right.

Q. What was that opinion?

A. My opinion was, taking into account the basic personality pattern of Mr. Arnett and taking into account the way he described the incident to me, I concluded that there was relatively little time devoted to consideration and contemplation before the actual commission of the act, and if that qualifies as making it un-

premeditated, then that's what I came up with.

\* \* \* \* \* \*

Q. [By Mr. Crismon, prosecutor]: But he can form an intent, he can premeditate and deliberate before he commits an act such as an act of killing; is that correct?

A. [By Dr. Baker]: He is capable of that, yes.

Q. And that is not inconsistent with your other determinations of his personality characteristics?

A. No, it is not.

We have held that an expert witness may testify as to a defendant's personality, but not as to' defendant's state of mind at the time of the crime.

> Although personality traits may be established by expert opinion, we have held that the use of expert testimony to establish the trait of acting without reflection (e.g., panic reaction to stress) is limited. *State v. Christensen*, 129 Ariz. 32, 628 P.2d 580 (1981). In *Christensen* we ruled that "[a]n expert witness may not testify specifically as to whether a defendant was or was not acting reflectively *at the time of a killing*." *Id.* at 35–36, 628 P.2d at 583–84 (emphasis added). Instead, an expert witness can only testify as to the general tendency of the defendant to act without reflection, allowing the jury to determine the defendant's intent at the time of the alleged crime. *See State v. Hallman*, 137 Ariz. 31, 35, 668 P.2d 874, 878 (1983); *State v. Christensen*, 129 Ariz. at 35–36, 628 P.2d 583–84;[4][2] *State v. Dickey*, 125 Ariz. 163, 169, 608 P.2d 302, 307–08 (1980).

*State v. Rivera*, 152 Ariz. 507, 514, 733 P.2d 1090, 1097 (1987).

 Defendant contends that the trial court erred in denying him an opportunity to present expert psychiatric testimony on the personality trait of impulsivity. Defendant claims that failing to admit such evidence denied him the fundamental right to present a defense in violation of the

sixth and fourteenth amendments to the United States Constitution and Ariz. Const. Art. 2, §§ (4) and (24), as to whether the murder was premeditated. We disagree.

The admission of evidence is a matter for the trial court's discretion, which will not be overturned unless an abuse of that discretion is shown. *State v. Williams*, 132 Ariz. 153, 157, 644 P.2d 889, 893 (1982). In the instant case, the trial court found that the proposed testimony did not show a character trait of impulsivity, but instead was testimony of the defendant's probable state of mind at the time the offense occurred. The trial court properly excluded the proffered expert testimony. *Rivera*, 152 Ariz. at 514, 713 P.2d at 1097.

## V. HOLDING

We have reviewed the record for fundamental error pursuant to A.R.S. § 13–4035, *Anders v. California*, 386 U.S. 738, 82 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). We find none.

The conviction and judgment of death is affirmed.

GORDON, C.J., FELDMAN, V.C.J., and HOLOHAN and MOELLER, JJ., concur.

---

**2.** Footnote 4 states:

4. In *Christensen* we stated that "[t]he establishment of the character trait of acting without reflection tends to establish that appellant acted

impulsively. From such a fact, the jury could have concluded that he did not premeditate the homicide." 129 Ariz. at 35, 628 P.2d at 583.