NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

LAURA ANN CAVNESS, *Appellant.*

No. 1 CA-CR 19-0044
FILED 4-7-2020

Appeal from the Superior Court in Maricopa County
No. FC2012-004322
The Honorable Kevin B. Wein, Judge

**JURISDICTION ACCEPTED IN PART; RELIEF DENIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Andrew S. Reilly
*Counsel for Appellee*

Bain & Lauritano, PLC, Glendale
By Amy E. Bain
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Randall M. Howe and Chief Judge Peter B. Swann joined.

---

**T H U M M A**, Judge:

¶1            Laura Cavness challenges orders holding her in criminal contempt, entered in April 2018 and December 2018, the latter confining her in jail for six months. Although these contempt orders are not appealable, sua sponte exercising special action jurisdiction over the December 2018 order, this court accepts jurisdiction in part but denies relief.

**FACTS AND PROCEDURAL HISTORY**

¶2            Laura and Brian Howard Wilson ended their marriage in a divorce decree entered in July 2013. As relevant here, Laura and Brian have one minor child, G.C.

¶3            In January 2017, Laura's adult daughter C.C., and C.C.'s husband C.E., filed a petition for an emergency order, without notice, seeking custody of G.C. The petition alleged Laura had been involuntarily admitted to the Urgent Psychiatric Center and, after being discharged, was threatening harm to herself and others. The court issued the custody order that same day and, after an evidentiary, affirmed the order.

¶4            After G.C. was placed with C.C. and C.E., Laura began contacting them in a variety of different ways, including by text messaging, email, social media, telephone and through third parties. In June 2017, the court granted C.C. and C.E.'s request to limit contact between Laura and G.C. When the court later ruled C.C. and C.E. had in loco parentis sole legal decision-making authority for G.C., this became a no contact order. The court specified that Laura was "to have no contact with [G.C.] through *any* electronic means, including but not limited to e-mails, text messages, calls, Instagram, Facebook, Facebook Messenger or any other social media or any other electronic means whatsoever." The court also prohibited Laura from posting on social media regarding C.C. or C.E. or the case.

¶5            Laura, however, persisted in attempting to contact G.C. In November 2017, C.C. and C.E. sought a contempt order, providing the court with pages of e-mails, text messages and social media posts Laura

sent after the no contact order issued. C.C. and C.E. also explained that they changed G.C.'s cell phone number on numerous occasions to no avail; Laura repeatedly found the new number and contacted G.C., both directly and through third parties. Laura demanded visitation on G.C.'s birthday and delivered a birthday gift to G.C. at school that included a letter pleading with G.C. to call Laura. Laura also contacted G.C. personally at school, after waiting for the child in a courtyard.

¶6        In December 2017, the court scheduled an indirect criminal contempt hearing that was then scheduled for April 2018. The matter was referred for prosecution, and an attorney was appointed to represent Laura. The State alleged Laura violated the no contact order by electronic means on five occasions and by using social media on three occasions. The State pursued the allegations under Arizona Rule of Criminal Procedure 35,[1] adding one reference to Arizona Revised Statutes (A.R.S.) section 12-861 in discussing the birthday present and letter Laura sent to G.C. at school.

¶7        On the day of the April 2018 criminal contempt hearing, the court met with counsel in chambers before the hearing began without a court reporter. As later revealed on the record, during that in-chambers meeting, the parties agreed that Laura would "admit to certain allegations of criminal contempt as outlined in the State's pretrial statement" and that the court would impose a sentence of six months jail time, to be deferred and not imposed if she complied with the no contact order. After being sworn, Laura admitted to eight Rule 35 contempt allegations. The court found her guilty of criminal contempt under Rule 35 and imposed a sentence of six months jail time, deferred and not to be imposed if she complied with the no contact order, which the court reaffirmed. Laura did not seek appellate review at that time.

¶8        Notwithstanding the criminal contempt finding and deferred jail time, Laura continued to violate the no contact order. In late September 2018, C.C. and C.E. made a filing showing Laura contacted G.C. directly by text and social media several times that month. In these contacts, Laura was asking G.C. to call her, and when G.C. responded that he would block her phone number, Laura responded in the following text dated September 14, 2018:

---

[1] Rule 33, effective during the superior court hearings, was re-numbered Rule 35 effective January 1, 2020. Citations to the current rule and statutes are used here.

Wow. Ok. Are you afraid. [G.C.] are you safe? Do you need to talk to someone you feel safe with? Sweetheart I have been trying to get you home for 612 days. I love you and miss you so much. You were stolen from me by [C.C. and C.E.]. They have told you I will go to jail if you and I talk or see each other. Honey I swear to you THAT IS NOT THE TRUTH. No one is putting me in jail or taking me away. Mom has been in court for months and you are going to come home I promise. Please look up a very important new phrase. Parental Alienation. That is what is being done to you. To make you afraid and to keep you from contacting me you have been lied to by people who you thought you could trust[.] Please baby TRUST ONLY IN YOURSELF. LISTEN TO THAT LITTLE VOICE I ALWAYS TOLD YOU WOULD TELL YOU WHAT WAS RIGHT AND WRONG. Some people call that voice your guardian angel. We all have it and the smartest people I know listen to that inner voice when making choices about what is good and what is not so good. You are good and have done nothing wrong. You are going to be 16 next month and I am very proud of you. Remember I am your mom and I have loved you your whole life and before you were born. I never lied to you. You have been told many bad and scary things in the last year and a half….please son promise me you will think again about what makes the most sense to you. If it doesn't sound true it isn't true[.] Remember I used to tell you that all the time. No one is in trouble. There is something you have to do that I promise you will change your life and you have to promise me you will be brave and do exactly what I tell you and you have to do it right away. You and I have to talk. You have this number and I will give you my cell number. YOU CAN'T CALL ME FROM YOUR PHONE OR ON ANY PHONE THAT [C.C. and C.E. and others] KNOW ABOUT. YOU HAVE BEEN

> BLOCKED. YOU MUST CALL ME FROM A PHONE OF A FRIEND OF YOURS OR CALL ME FROM A PHONE FROM A STORE OR SCHOOL. PLEASE [G.C.] I NEED TO HEAR YOUR VOICE AND YOU NEED TO HEAR ME. My heart is broken and I have cried a million tears since you have been gone. I didn't give you away and they did not get permission from me to take you. I am so worried about you and I am begging you to be a brave young man and trust me sweetie[.] Please trust me. I love you and will be waiting for you to call. God is watching over you and will keep you safe. You have to save our family. You have to be my hero [G.C.]. . . . I love you and I am safe I swear to you.

As a result of this late September 2018 filing, the court scheduled a December 2018 contempt hearing. The court informed Laura and her counsel that these new contacts constituted the contempt allegations. The State's pre-trial statement and notice of contempt allegations limited the allegation to this September 14, 2018 text message, also making plain the State was proceeding under Rule 35.

**¶9**　　　　At the December 2018 contempt hearing, the State called as witnesses C.E., G.C.'s father, his father's girlfriend and an investigator. C.E. testified to the contents of the September 14, 2018 text message, the phone number it was sent from and the no contact order. The investigator testified that based upon a subpoena from T-Mobile, Laura was the subscriber of one of the phone numbers used to contact G.C. The other witnesses confirmed Laura used two other phone numbers, which were both used to contact G.C. The court took judicial notice of the no contact order.

**¶10**　　　　Having received the evidence and argument, the court found Laura guilty of criminal contempt under Rule 35. As a consequence, the court imposed the six months of jail time that had been deferred in April 2018, and an additional month for the September 14, 2018 text message, to be served concurrently. Laura filed a notice of appeal later in December 2018. Laura did not seek a stay of that consequence pending review by this court, and she was released from custody in June 2019.

## DISCUSSION

### I. Rule 35 Criminal Contempt Cannot Be Challenged by Appeal.

**¶11**        "This court's appellate jurisdiction is defined, and limited, by the Legislature." *Brummett v. MGA Home Healthcare, L.L.C.*, 240 Ariz. 420, 426 ¶ 4 (App. 2016). This court has an independent obligation to determine it has jurisdiction over an appeal. *Robinson v. Kay*, 225 Ariz. 191, 192 ¶ 4 (App. 2010). Laura's putative appeal is based on the argument that the contempt orders were issued under A.R.S. §§ 12-861 and -863, where there is a right to an appeal. Because the contempt orders were issued under Rule 35, however, she has no right to an appeal.

**¶12**        For A.R.S. § 12-861 to apply, Laura's conduct would have had to (1) violate a lawful court order and (2) be an independent criminal offense. *See Riley v. Superior Court*, 124 Ariz. 498, 499 (App. 1979); *State v. Cohen*, 15 Ariz. App. 436, 439 (1971). Although contemptuous, Laura's acts do not appear to be independently criminal. For this reason, the court proceeded under Rule 35, not Section 12-861. Accordingly, because Rule 35 governed these contempt proceedings, she has no right to appeal the contempt orders. *See State v. Mulligan*, 126 Ariz. 210, 216-17 (1980) (finding no authority for appeals of contempt orders). Instead, her exclusive route for appellate review was by special action. *See, e.g.*, *Stoddard v. Donahoe*, 224 Ariz. 152, 154 ¶ 7 (App. 2010); *Hirschfeld v. Superior Court*, 184 Ariz. 208, 209 (App. 1995); Ariz. R.P. Spec. Act. 1(a). Sua sponte construing Laura's putative appeal as a petition for special action, the issue then becomes whether this court should accept special action jurisdiction.

**¶13**        Laura's December 2018 notice of appeal seeks to challenge both the April 2018 and the December 2018 contempt orders. In doing so, she waited seven months after the April 2018 order, issued as a result of her admission under oath, to seek to appeal criminal contempt and the imposition of the agreed-upon and suspended six months jail time. Laura did not seek to challenge the April 2018 order until after issuance of the December 2018 order, which found her in contempt based on her conduct after entry of the April 2018 order and imposing the suspended consequences specified in the April 2018 order. Moreover, Laura did not seek suspension of the jail time pending this court's resolution and has now served that time. "One of the equitable considerations involved in accepting special action jurisdiction is a petitioner's showing of a need for *speedy* relief." *State ex. rel. Neely v. Rodriguez*, 165 Ariz. 74, 77 (1990) (emphasis added). Given her delay in challenging the April 2018 order, this court

declines to accept special action jurisdiction over her challenges to the April 2018 order.[2]

**¶14** By contrast, Laura's attempt to seek review by this court of the December 2018 order was timely. Accordingly, and because she would otherwise be deprived of appellate review, this court will exercise its discretion and sua sponte accept special action jurisdiction over the December 2018 order. *See* A.R.S. § 12-120.21(A)(4); Ariz. R.P. Spec. Act. 1(a).

## II.     Laura Has Shown No Reversible Error for the December 2018 Order.

**¶15** Laura argues she did not receive adequate advance notice of the allegation to be tried at the December 2018 hearing, an issue this court reviews de novo. *State v. Rosengren*, 199 Ariz. 112, 116 ¶ 9 (App. 2000). Laura was charged with indirect criminal contempt under Rule 35. **"**[I]ndirect contempt requires that the alleged contemnor be given advance notice of the charge, an opportunity to be heard, and present testimony in his own behalf. The party is entitled to his day in court." *Ong Hing v. Thurston*, 101 Ariz. 92, 99 (1966). As applicable here, a court "may not find a person in criminal contempt without notifying the person of the charge." Ariz. R. Crim. P. 35.3.

> The court must set the hearing on a date that will allow the person reasonable time to prepare a defense. The notice of hearing *must state* the hearing's time and place, and *the essential facts* constituting the charged contempt. A court may give the notice orally in open court in the presence of the person charged or by an order to show cause.

*Id.* (emphasis added).

---

[2] On the merits, Laura's challenge to the April 2018 order would fail. She argues that the order must be vacated because the court failed to conduct a full Rule 17 colloquy before accepting her admission at the April 2018 hearing. Laura has not shown that Rule 17 applied, given the proceeding was under Rule 35 and did not involve an independent criminal offense. Nor has Laura shown that her admissions, under oath, were not sufficiently knowing, voluntary and intelligent. As a result, and recognizing she did not timely object, Laura has not shown the proceedings leading to the April 2018 order constitute fundamental error.

¶16　　　　The record shows Laura had at least two months' notice of the allegations. In late September 2018, C.C. and C.E. provided notice to Laura and the court of her violations of the no contact order earlier that month, attaching the September 14, 2018 text message (among others) that provided the basis for the December 2018 order. At a September 2018 hearing that followed, the court specifically addressed these new alleged violations with Laura and her counsel. At that hearing, the court set the date and time for the December 2018 contempt hearing and informed Laura these allegations would be the subject of that hearing. As reflected in the following exchange, the court clarified the allegations to be addressed at the December 2018 hearing:

> [Laura's counsel]: Well, what exactly are we – is this going to be these newest allegations?
>
> The Court: Yes. These are if you have any violation of the Court's orders which as you know, I've deferred the jail sentence and it will be whether or not that jail sentence gets imposed.

¶17　　　　More than a week before the December 2018 hearing, the State filed its pre-trial statement, which narrowed the focus of that hearing to the September 14, 2018 text message. This further provided Laura advance notice and further narrowed the scope of the December 2018 hearing. On this record, Laura has not shown that she failed to receive proper advance notice of the scope of the December 2018 hearing. *See State v. Arnett*, 158 Ariz. 15, 18-19 (1988) (finding indictment gave sufficient notice even though defendant did not learn the state's theories of prosecution until day of trial).

¶18　　　　Laura also argues there was insufficient evidence to support the court's December 2018 contempt finding, an issue this court reviews de novo. *State v. West*, 226 Ariz. 559, 562 ¶ 15 (2011). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 562 ¶ 16 (quoting *State v. Mathers*, 165 Ariz. 64, 66 (1990)).

¶19　　　　The State was required to prove Laura "willfully disobey[ed] a lawful writ, process, order, or judgment of a court by doing . . . an act or thing forbidden." Ariz. R. Crim. P. 35.1(a). The State was required to prove both the acts alleged and the requisite intent beyond a reasonable doubt. *See Cohen*, 15 Ariz. App. at 440 (citing cases). On appeal, Laura does not

contest the proof showing that she committed contemptuous acts, only that the State failed to prove a lawful order prohibited her from contacting G.C.

¶20        Although the no contact order was not marked and received as an exhibit at the December 2018 hearing, at the State's request and without objection, the court took judicial notice of its order prohibiting that contact. *See* Ariz. R. Evid. 201. C.E. also testified that there were orders in place prohibiting Laura from contacting G.C. Although the better practice would have been to have the order marked and received in evidence, Laura has not shown that the court fundamentally erred in taking judicial notice of its own order. *See State v. Rhome*, 235 Ariz. 459, 461 ¶ 8 (App. 2014) ("[A] court may properly take judicial notice of its own records."). On this record, Laura has not shown fundamental error.

**CONCLUSION**

¶21        Sua sponte exercising special action jurisdiction over the superior court's December 2018 order, this court accepts jurisdiction in part but denies relief.

