647 P.2d 624
**STATE of Arizona, Appellee,**

v.

**Joseph Albert ENCINAS, Appellant.**

No. 5272.

Supreme Court of Arizona,
In Banc.

June 2, 1982.
Rehearing Denied June 29, 1982.

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Asst. Atty. Gen., Chief Counsel, Crim. Div., David R. Cole, Asst. Atty. Gen., Phoenix, for appellee.

James Hamilton Kemper, Phoenix, for appellant.

GORDON, Vice Chief Justice:

Appellant Joseph Albert Encinas and co-defendant Darrick L. Gerlaugh were convicted of first degree murder, A.R.S. § 13–1105, armed robbery, A.R.S. § 13–1904, and kidnapping, A.R.S. § 13–1304. The trial court sentenced appellant to life imprisonment without possibility of parole for twenty-five years on the murder charge, A.R.S. § 13–703, and twenty-one years each on the other charges, A.R.S. §§ 13–701, –702. All sentences were ordered to run concurrently. Appellant appealed all three convictions. We have jurisdiction pursuant to Ariz. Const. Art. 6, § 5(3) and A.R.S. § 13–4031.

On the evening of January 24, 1980, appellant, Gerlaugh, and James Matthew Leisure had some drinks at an acquaintance's home in Chandler, Arizona. At about 11:30 p. m., the three decided to leave and hitchhike into Phoenix. They were picked up by Scott Schwartz, the victim. Shortly after entering the car, Gerlaugh pulled out a gun and ordered Schwartz to drive a route that ended up on a dirt road along a canal near the boundary between the communities of Mesa and Gilbert. All four people got out of the car.

Gerlaugh, Leisure, and appellant then tried to rob Schwartz. Schwartz resisted and a scuffle ensued. Schwartz was beaten for ten or fifteen minutes. Gerlaugh then got back into the car and drove it over Schwartz while Leisure and appellant held him on the road. Finally, Gerlaugh and Leisure stabbed Schwartz with a screwdriver thirty to forty times in the head and chest. A pathologist testified that these events caused several serious injuries, any one of which would have been fatal.

The three assailants dragged Schwartz's body off the road to an adjoining field and covered it with alfalfa. They returned to the road and drove away in Schwartz's car.

When Schwartz's car broke down, they resumed hitchhiking. Harry Roche drove by and picked them up about 2:00 a. m. Gerlaugh pulled the gun on Roche and ordered him to take what appeared to Roche to be random turns. When they finally stopped, Gerlaugh, Leisure, and appellant got out of Roche's pickup truck. They then ordered Roche to get out, but he sped away before they could stop him.

The three found a haystack and spent the night there. Within a few days, appellant became remorseful. He confided in someone what had happened, and this person reported the crime to the police. Gerlaugh, Leisure, and appellant were interviewed,

they all confessed, and they all were arrested and charged.

Appellant raises three issues in his appeal. He argues that: (1) his confession was involuntary; (2) the trial court erred when it precluded appellant from calling Leisure as a witness before the jury when Leisure out of the jury's presence, indicated that he would invoke his Fifth Amendment right against self-incrimination as to all questions; and (3) the trial court erred when it instructed the jury on both premeditated and felony murder but only gave the jury one form of verdict for guilt of first degree murder. In addition, pursuant to A.R.S. § 13-4035, we have discovered error in the use of Mr. Roche's testimony after he had been hypnotized to recall the facts of the night in issue. We consider each alleged error below, and we affirm the convictions and sentences.

## VOLUNTARINESS OF THE CONFESSION

Appellant objects to the admission of his statements to the police on the ground that he did not voluntarily confess. One of the detectives interrogating him conveyed that Gerlaugh had stated that appellant was totally responsible for the crime. The detective then told appellant that he had "better get [his] two cents in" so that he would not "take the whole rap." Appellant argues that the detective thereby made an implied promise of leniency.

> "In Arizona, confessions are prima facie involuntary and the burden is on the state to show they are voluntary. * * * Such showing must be by a preponderance of the evidence. * * * Once the trial court finds that the confession is voluntary, such finding will not be upset on appeal absent clear and manifest error."

*State v. Hall*, 120 Ariz. 454, 456, 586 P.2d 1266, 1268 (1978) (citations omitted).

Under the totality of the circumstances of this case, we do not believe the trial court's admission of the confession should be upset on appeal. First, the state presented evidence both through its own witness and through appellant that appellant was not informed of Gerlaugh's statements until after he had confessed to the murder. Second, when appellant was questioned before and after the confession about the voluntariness of his statements, he responded that his confession was voluntary and he had not been threatened, coerced, or made any promises. The trial court had the opportunity to judge the credibility of the witnesses as they testified and of the evidence presented, and we can find no clear and manifest error in its judgment that appellant's confession was voluntarily rendered.

## PRECLUSION OF WITNESS

Both parties agree that the trial court erred when it precluded appellant from calling Leisure as a witness even though it had been determined out of the jury's presence that Leisure would invoke his Fifth Amendment right not to testify as to all questions. The trial court so ruled at the request of the prosecutor and attorney for codefendant Gerlaugh. In *State v. Gretzler*, 126 Ariz. 60, 612 P.2d 1023 (1980) (decided almost eight months before the trial in the instant case), we held that a defendant's Sixth Amendment right to present evidence on his or her behalf includes the right to call a cofelon to testify even if it has been determined that the cofelon will invoke the Fifth Amendment as to all questions. *Gretzler* applied our opinion of four years earlier—*State v. Ortiz*, 113 Ariz. 60, 546 P.2d 796 (1976). The trial court clearly erred in precluding appellant from calling Leisure.

We also held in *Gretzler*, however, that such an error will not require reversal if it is harmless beyond a reasonable doubt. The error in the instant case is harmless.

One of appellant's defenses to all the charges was duress. See A.R.S. § 13-412. Appellant made an offer of proof that if Leisure testified, he would corroborate appellant's duress defense. On appeal, appellant maintains that the prejudice suffered by his inability to call Leisure as a witness

was that he was precluded from showing the jury that he had presented all the evidence he could to support the duress defense.

The error is harmless because appellant was not entitled to rely on the duress defense.[1] A.R.S. § 13–412(C) provides that the duress defense "is unavailable for offenses involving homicide or serious physical injury."

The charges against appellant were first degree murder, armed robbery, and kidnapping. First degree murder, whether premeditated or felony murder, is a homicide. A.R.S. § 13–1101(2). Whether the jury convicted appellant for premeditated or felony murder, the plain language of A.R.S. § 13–412(C) bars duress as a defense.[2]

Under the circumstances of this case, duress was also no defense to the armed robbery and kidnapping charges. " 'Serious physical injury' includes physical injury which creates a reasonable risk of death, or which causes serious and permanent disfigurement, or serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb." A.R.S. § 13–105(29). It cannot be questioned that the brutal beating, mutilation, and eventual slaying of the victim during the robbery-kidnapping-murder transaction involved serious physical injury. See State v. Barrett, 132 Ariz. 88, 644 P.2d 242, (1982) (death involves serious physical injury). Because the armed robbery and kidnapping were offenses involving serious physical injury, A.R.S. § 13–412(C) also barred duress as a defense to those charges.

Therefore, the preclusion of calling Leisure before the jury was harmless error beyond a reasonable doubt. The only purpose of calling Leisure was to buttress the duress defense, but duress was no defense as a matter of law in the instant case.

## FORM OF VERDICT

Appellant was charged with first degree murder under A.R.S. § 13–1105. The indictment recited that the murder was both premeditated and a felony murder. The jury was instructed that it could find first degree murder if it determined that the murder was either premeditated or a felony murder. The jury was given only two forms of verdict for the murder charge—guilty of first degree murder or not guilty of first degree murder.

Appellant raises the argument that he was denied the right to a unanimous jury verdict as guaranteed by Ariz.Const. Art. 2, § 23 because the court failed to give a form of verdict for guilty of premeditated murder and one for guilty of felony murder and none for guilty of first degree murder generally. The theory is that with the forms of verdict given, some jurors could have found him guilty of premeditated murder but not felony murder while the rest could have found him guilty of felony murder but not premeditated murder. Thus, he would be convicted of first degree murder even though the jury could not unanimously agree on what kind of first degree murder he committed.

Although the scenario described by appellant could have occurred, we are not persuaded that he was thereby denied any right. In Arizona, first degree murder is only one crime regardless whether it occurs as a premeditated murder or a felony murder. See State v. Axley, 132 Ariz. 383, 646 P.2d 268 (1982). Although a defendant is entitled to a unanimous jury verdict on whether the criminal act charged has been committed, State v. Counterman, 8 Ariz. App. 526, 448 P.2d 96 (1968), the defendant is not entitled to a unanimous verdict on the precise manner in which the act was committed. See Counterman, supra, (where two assaults occurred as part of a continuous course of conduct during the same episode

---

1. We note that the prosecutor and defense attorneys all agreed to the giving of the instruction on duress. But where an instruction does not apply as a matter of law, the mutual agreement of the attorneys has no effect.

2. This is consistent with the old code's § 13–134(5) which, by other language, also barred the use of the duress defense in both premeditated and felony murder cases.

giving rise to one charge of assault with a deadly weapon, the right to a unanimous jury verdict did not require the state to elect which assault it would rely on to support a conviction); *State v. Dixon,* 127 Ariz. 554, 622 P.2d 501 (App.1980) (because A.R.S. § 13–1802 defines only one crime—theft—which can be committed in more than one way, Art. 2, § 23 only requires one form of verdict for theft and not one form for each way in which theft can be committed). Even if the events appellant describes occurred, he was still convicted of first degree murder by a unanimous verdict.

## HYPNOTICALLY REFRESHED TESTIMONY

Harry Roche testified at trial about the episode between himself and the cofelons after the three had murdered Schwartz. When Roche first went to the police, he could not identify any of the three cofelons. He was then hypnotized by a Maricopa County Deputy Sheriff in an attempt to obtain a better description of the cofelons. Although some composite pictures were made from Roche's hypnotically aided descriptions, he still could not identify either Gerlaugh or appellant at their joint trial.

Appellant's trial attorney objected to Roche taking the stand at trial on the ground that because of the hypnosis, Roche no longer had an independent recollection of the events about which he would testify. The trial court held an evidentiary hearing and determined that Roche's memory had not been changed by the hypnosis session. Appellant's trial attorney's objection was overruled and Roche was allowed to testify.

Although our decision in *State v. Mena,* 128 Ariz. 226, 624 P.2d 1274 (1981), existed at the time of this appeal, appellate counsel, for whatever reason, did not raise the issue in this appeal concerning a hypnotized witness.[3] A.R.S. § 13–4035 empowers and requires this Court to search the record for fundamental error when a criminal defendant appeals. Therefore, we will consider the hypnosis issue.

*Mena* was modified as to prehypnotic statements and reaffirmed as to posthypnotic statements by this Court's consideration of the motion for rehearing in *State ex rel. Collins v. Superior Court,* 132 Ariz. 180, 644 P.2d 1266, (1982) (opinion on rehearing filed May 4, 1982). We held in the original opinion in *State ex rel. Collins* that the rule of that case and *Mena* would be applied prospectively only from the decision in *Mena.* For cases where the hypnosis and the hypnotically refreshed testimony both precede our decision in *Mena,* we will not reverse a conviction if introduction of the testimony amounted to harmless error. *State ex rel. Collins, supra* (original opinion); *State v. Stolp,* Ariz., No. 5397 (filed June 2, 1982).

Whatever error there may have been in the instant case, it did not prejudice appellant. Roche provided no direct evidence of any of the elements of the crimes with which appellant was charged.[4] He testified about an event subsequent to and apart from the transaction at issue. Roche could not even identify appellant in the courtroom at the time of trial. Appellant's own confession proved the elements of all the crimes charged. The pathologist's testimony added more evidence against appellant. Moreover, appellant's own confession also related the events about which Mr. Roche testified. Under the facts of the instant case, the slight evidence obtained through Roche's testimony could not have prejudiced appellant given the overwhelming evidence of guilt provided by appellant's own words and the pathologist's testimony.

The convictions and sentences are affirmed.

HOLOHAN, C. J., and HAYS, CAMERON and FELDMAN, JJ., concur.

---

3. *Mena* was filed on February 3, 1981. The motion for rehearing was denied on March 17, 1981. Appellate counsel filed his opening brief on November 6, 1981.

4. Roche's testimony was used under the "prior bad acts" rule of Ariz.R.Evid. 404(b).