672 P.2d 1311

STATE of Arizona, Appellee,

v.

Robert Paul BERNDT, Appellant.

No. 5579.

Supreme Court of Arizona,
En Banc.

Oct. 24, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Georgia B. Ellexson, Asst. Attys. Gen., Phoenix, for appellee.

Fred C. Mather, Phoenix, for appellant.

HOLOHAN, Chief Justice.

Appellant, Robert Paul Berndt, was tried before a jury and convicted of two counts of first degree murder, A.R.S. § 13–1105, one count of attempted murder, A.R.S. §§ 13–1001, 13–1105, armed robbery, A.R.S. § 13–1904, and kidnapping, A.R.S. § 13–1304. Appellant was sentenced to life imprisonment without the possibility of parole for 25 years for each of the murder counts. He was also sentenced to 21 years for the attempted murder charge, 21 years for the armed robbery charge and 21 years for the kidnapping charge. All of the sentences run concurrently. The case was automatically appealed to this court. We have jurisdiction pursuant to Ariz. Const. Art. 6, § 5(3) and A.R.S. § 13–4031. We affirm.

The appellant raises five issues on appeal. They are:

1. Whether appellant's statements were elicited in violation of Sixth Amendment right to counsel.

2. Whether the trial court erred in instructing the jury that duress is not a defense to felony murder.

3. Whether the trial court erred by not providing separate forms of verdict for first-degree murder.

4. Whether the State presented sufficient evidence to prove appellant sane beyond a reasonable doubt.

5. Whether appellant was denied an opportunity to make an adequate record.

The facts necessary for a resolution of the issues presented have been recited in the companion case of *State v. Hensley*, 137

Ariz. 80, 669 P.2d 58 (1983). We borrow from that opinion.

In January 1981, appellant was travelling by bus to California. En route, he met Robert Hensley who was travelling to Phoenix, Arizona for work. Both men got off the bus in Phoenix. Being low on funds, they sought assistance at the Salvation Army. There they met Roger Cihak and Roger and Joyce Windemuth. The group decided to pool their meager resources and rent a motel room on East Van Buren.

On the evening of January 26, 1981, appellant, Hensley and Cihak left the motel in the Windemuth's car. They cased several grocery stores then passed the Tin Horn Saloon. The Tin Horn appeared deserted and the men decided it made an attractive target for a robbery. The three men entered the bar. Robert Hensley, armed with appellant's .357 magnum, ordered the three people in the bar (the female bartender, and a male and female customer) to get on the floor. Appellant took money from the cash register. Cihak stood at the door. As the bartender, Mary Turman, and the two customers, Donna Yeager and Bill Cooper, lay face down on the floor, Hensley fired four to five shots, striking each victim at least once in the head. Cooper was dead at the scene; Turman died at the hospital and Yeager miraculously survived.

The three men returned to the motel on East Van Buren. The next day, Hensley shot Cihak in the chest with the .357 and then walked away. The police were summoned to the motel, where they questioned and released appellant and the Windemuths.

After their questioning, appellant and the Windemuths left for Michigan in the Windemuth's car. The group stopped in Clinton, Oklahoma and sought food and money at the Traveler's Aid station. They were referred to the Clinton Police Department for clearance. The appellant was arrested there on a Texas fugitive from justice warrant. Counsel was appointed to represent the appellant on the Texas charge.

During a search incident to the arrest, the police found a letter written by the appellant in his suitcase. The letter was addressed to the F.B.I. and it contained the appellant's confession to the murder of a California police officer.

The Clinton Police Department notified the California authorities. Two California officers flew to Oklahoma to interrogate the appellant regarding the California homicide. These officers first interviewed the appellant on February 4, 1981. They did so without the consent or knowledge of his court-appointed attorney. The officers conducted a second interview on the following day after being introduced to the appellant's attorney. The record indicates that appellant met with his attorney the morning of February 5, 1981. The appellant was advised by counsel, in the presence of police officers, not to say anything or cooperate further with the police. The appellant made what was described as an obscene gesture toward his appointed counsel and then confirmed to the California officer that he wished to continue talking despite his attorney's advice to the contrary. He signed a waiver to that effect.

A third interview was conducted by the California officers the following day, February 6. Appellant's counsel was not present nor was he notified that the officers would be questioning the appellant. During this interview, the appellant confessed his involvement in the Tin Horn robbery and homicides. On February 10 the California officers made a videotape of this confession. Later that same day, an officer from the Phoenix Police Department made another videotape of the appellant's statement regarding the Tin Horn homicides. Appellant's counsel was neither present at nor contacted prior to either of the videotaping sessions. At this time, appellant had been indicted only for the Texas charge.

Prior to trial, the appellant moved to suppress his statements to the California and Arizona officers on the grounds that they were involuntary. The appellant's motion to suppress his statements was denied. The trial court found that the statements were voluntarily made after the appellant had waived his constitutional rights.

## SIXTH AMENDMENT CLAIM

█ Appellant asserts that the statements he made to California and Arizona police officers in Clinton, Oklahoma, without the presence of his court-appointed counsel, should not have been admitted at trial. The statements, he argues, were obtained in violation of his Sixth Amendment right to counsel.

In *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), the U.S. Supreme Court held that the government violated the Sixth Amendment when it deliberately elicited incriminating information from an indicted appellant who was entitled to assistance of counsel. Similarly, in *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), the Supreme Court held that the Sixth Amendment is also violated when the police use a paid informant-prisoner to surreptitiously elicit incriminating information from a jailed appellant when the information deals with the crime for which the appellant is being held.

As we noted in *State v. Ortiz*, 131 Ariz. 195, 639 P.2d 1020 (1981), *cert. denied*, 456 U.S. 984, 102 S.Ct. 2259, 72 L.Ed.2d 863 (1982), what distinguishes the instant case from *Massiah* and *Henry* is that the information elicited concerned only crimes for which the appellant had not yet been indicted. Because appellant had not yet been indicted for the Tin Horn robbery and homicides, his Sixth Amendment right to counsel had not yet attached for those charges. *See State v. Hall*, 129 Ariz. 589, 633 P.2d 398 (1981). In *Ortiz, Id.*, we held that there is no Sixth Amendment violation when the police elicit incriminating information on unindicted crimes from an indicted appellant who is without the benefit of counsel so long as that information is used only to prove the unindicted charges.

Accordingly, we find no error in the admission of the appellant's statements at trial. At the time the statements were elicited, the only charges pending against the appellant were those arising out of a Texas robbery. His right to counsel for the Tin Horn homicides had not attached. Thus, there can be no Sixth Amendment violation.

This is not a case in which the police resorted to subterfuge in an attempt to deprive the appellant of his right to counsel. *Cf. Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Here it is clear the appellant was offered the assistance of his appointed counsel and he refused it. Nor is this a case in which the appellant ever invoked his right to have counsel present during questioning, or expressed his desire to deal with the police only through counsel. *Cf. Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 278, *rehearing denied*, 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981). We find no error.

## INSTRUCTION

█ The appellant asserts that the trial court erred in instructing the jury that duress was not a defense to felony-murder. We expressly rejected this argument in *State v. Encinas*, 132 Ariz. 493, 647 P.2d 624 (1982).

A.R.S. § 13–412(C) provides that the duress defense "is unavailable for offenses involving homicide or serious physical injury." First degree murder, whether premeditated or felony murder, is, of course, a homicide. A.R.S. §§ 13–1101(2), 13–1105. Whether the jury convicted appellant of premeditated or felony murder, the plain language of A.R.S. § 13–412(C) bars duress as a defense. *Encinas, Id.* at 496, 647 P.2d at 627. We find no error.

## FORM OF VERDICT

Appellant also contends that the trial court erred by not providing separate forms of verdict for first-degree murder; that is, one form for premeditated murder and another for felony murder. He argues that he was denied the right to a unanimous jury verdict as guaranteed by Ariz.Const. Art. 2 § 23.

Appellant was charged with first-degree murder under A.R.S. § 13–1105. By indictment, the crime was charged as both pre-

meditated and felony murder. The jury was instructed that it could find first degree murder if it determined that the murder was either premeditated or a felony murder. The jury was given three forms of verdict for the murder charge—guilty of first degree murder, not guilty of first degree murder and not guilty by reason of insanity. By way of questions submitted on the verdict form, the trial court inquired of the jury's specific findings of premeditation and felony murder. Eight jurors found appellant guilty of felony-murder and four jurors found him guilty of premeditated murder.

█ In Arizona, first degree murder is only one crime regardless of whether it occurs as a premeditated murder or a felony murder. *State v. Encinas,* 132 Ariz. 493, 496, 647 P.2d 624, 627 (1982). See also *State v. Axley,* 132 Ariz. 383, 646 P.2d 268 (1982). A.R.S. § 13–1105 defines only one crime—first degree murder. As we stated in *State v. Encinas, supra:*

> "Although an appellant is entitled to a unanimous jury verdict on whether the criminal act charged has been committed, *State v. Counterman,* 8 Ariz.App. 526, 448 P.2d 96 (1968), the appellant is not entitled to a unanimous verdict on the precise manner in which the act was committed. (citing cases)" *Id.* at 496, 647 P.2d at 627–28.

Article 2, § 23 only requires one form of verdict for first-degree murder. *State v. Encinas, supra.* We find no error.

## EVIDENCE OF SANITY

Appellant contends that the trial court erred in failing to direct a verdict of acquittal because the State failed to present sufficient evidence to prove appellant sane beyond a reasonable doubt.

█ An appellant is presumed sane. If, however, he presents evidence sufficient to generate a reasonable doubt as to his sanity, the burden shifts to the State to prove his sanity beyond a reasonable doubt. *State v. Vickers,* 129 Ariz. 506, 633 P.2d 315 (1981). The State must then prove the appellant knew the nature and quality of his

act and that he knew that what he was doing was wrong. *State v. Schantz,* 98 Ariz. 200, 403 P.2d 521 (1965), *cert. denied,* 382 U.S. 1015, 86 S.Ct. 628, 15 L.Ed.2d 530 (1966).

█ For the trial court to direct a verdict of acquittal because of the failure of the State to prove appellant's sanity, the trial court must conclude that on the basis of the evidence, reasonable persons must necessarily possess a reasonable doubt as to appellant's sanity at the time of the offense. *State v. Ganster,* 102 Ariz. 490, 433 P.2d 620 (1967).

Appellant admits that he knew the nature and quality of his acts at the time of the offense. His argument, rather, is that the State presented no evidence to show that appellant could distinguish right from wrong. We do not agree.

Dr. Otto L. Bendheim, a psychiatrist who examined appellant's mental status at the time of the killings, testified for the State. In rebuttal, Dr. Bendheim testified that appellant was aware of the wrongfulness of his conduct and was able to know right from wrong at the time of the offense. Dr. Bendheim further testified:

> "A. Yes. I questioned him as to the three charges which he said he was charged with. And I asked him, 'Is this a crime?'
>
> His answer was, 'I don't consider it a crime, but others do.' Then, I asked him the next question, 'Would that be punishable?' And his answer was, 'Yes.'"

█ Appellant's belief that his acts were not criminal, although others believed they were, does not establish an inability to determine right from wrong sufficient to meet the M'Naughten test. *See State v. Sanchez,* 117 Ariz. 369, 573 P.2d 60 (1977). Here, appellant's belief that others considered his acts criminal, while admitting his knowledge that the acts were crimes, indicates an ability to distinguish right from wrong. We believe that the State introduced substantial evidence of the appellant's sanity at the time of the Tin Horn

murders. Reasonable persons would not necessarily have a reasonable doubt as to appellant's sanity. *State v. Ganster, supra.* The trial court did not err in submitting the issue to the jury.

 Appellant further complains that the evidence was not sufficient to support the verdict of guilty. When sufficient evidence is introduced to support a theory of the case establishing the appellant's sanity beyond a reasonable doubt, we will uphold the jury's verdict. *State v. Sisk,* 112 Ariz. 484, 543 P.2d 1113 (1975).

### CONDUCT OF TRIAL

Finally, appellant complains that he was denied an opportunity to make an adequate record because a certain bench conference was not recorded.

Appellant relies on two Arizona Appeals Court opinions for the proposition that the practice of holding off-the-record conferences at trial deprives the Appellant of an opportunity to make an adequate record and, hence, is a denial of due process. *See State v. Sanchez,* 130 Ariz. 295, 635 P.2d 1217 (App.1981), *State v. Babineaux,* 22 Ariz.App. 322, 526 P.2d 1277 (1974).

Nothing in *Sanchez, Id.,* or *Babineaux, Id.,* can be read to require the verbatim reporting of all bench conferences. Furthermore, the record does not reflect a request by the appellant for a recording of bench conferences. Nor does it reflect an objection to the procedure (the holding of conferences off-the-record) at a time when such an objection could be ruled upon. *Cf. State v. Sanchez,* 130 Ariz. 295, 635 P.2d 1217 (App.1981).

The record does reflect that the trial judge met with defense counsel and the prosecutor in his chambers where the three discussed what actually transpired at the unrecorded conference. Defense counsel had an adequate opportunity to make his record. He in fact related what the trial judge called a "verbatim" account of the conversation occurring at the bench conference. The record simply does not reflect that appellant was denied any opportunity to make an adequate record for appeal.

Finally, appellant has failed to show any prejudice. This is not a case in which an inadequate record impairs the appellant's ability to challenge rulings made by the trial court or preserve objections for appeal. *Cf. State v. Babineaux, supra.* The subject of the bench conference was the court's denial of appellant's request to re-cross-examine the State's psychiatrist. Appellant does not challenge this ruling on appeal, he merely asserts that the failure to record the bench conference deprived him of a fair trial. His argument is without merit. We find no error.

We have reviewed the record for fundamental error pursuant to A.R.S. § 13–4035, and find none.

The convictions and sentences are affirmed.

GORDON, V.C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.