## Commonwealth v. Miller

*Alita A. Rovito, assistant district attorney,* for the Commonwealth.

*Robert J. Donatoni,* for defendant.

SUGERMAN, *J.,* September 7, 1994—On October 23, 1991, Robert I. Miller was found guilty by a jury of the criminal charges of rape,[1] involuntary deviate sexual intercourse,[2] indecent assault,[3] and simple assault.[4] The Honorable Charles B. Smith presided at the defendant's trial. Trial counsel filed post-trial mo-

1. 18 Pa.C.S. §3121.
2. 18 Pa.C.S. §3123.
3. 18 Pa.C.S. §3126.
4. 18 Pa.C.S. §2701.

tions but before Judge Smith ruled upon such motions, he was appointed to the federal bench and the case was reassigned to the writer. The defendant obtained new counsel who then filed a supplemental and amended motion for a new trial and included therein several allegations of ineffective assistance on the part of trial counsel.

We convened a post-trial hearing upon post-trial counsel's allegations of ineffectiveness and following the hearing, we denied and dismissed the defendant's supplemental and amended motion for a new trial. On March 16, 1994, we sentenced the defendant to a term of incarceration of not less than six nor more than 20 years upon the rape conviction, and to a concurrent term of not less than three years nor more than six years upon the I.D.S.I. conviction. We imposed no sentences upon the indecent assault and simple assault convictions.

Following the imposition of sentence, the defendant filed a timely appeal in the Superior Court of Pennsylvania. Upon our receiving notice of the defendant's appeal, we directed the defendant's post-trial counsel to serve upon us a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Counsel has served such *statement* setting forth five such issues. We consider them seriatim.

### (I)

On the morning of and immediately prior to the commencement of the defendant's trial, the Commonwealth, over the defendant's objection, was permitted to amend the information. Post-trial counsel contends that this was error and he frames the issue thusly on appeal:

"(1) The trial court erred in permitting the Commonwealth to amend the information on the day that

trial was to commence to include the new and additional and previously uncharged offenses of rape, 18 Pa.C.S. §3121(2) and involuntary deviate sexual intercourse, 18 Pa.C.S. §3123(2) so as to add a new theory of rape and involuntary deviate sexual intercourse by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution where the defendant had, prior to the amendment, been charged with rape and involuntary deviate sexual intercourse by forcible compulsion and where the amended provision alleged a different set of events and elements of the offenses."

In order to place the issue in its proper context, it should be noted that following the defendant's preliminary hearing, an information was filed against him charging him, inter alia, with one count of rape, 18 Pa.C.S. §3121(1) (forcible compulsion), and one count of I.D.S.I., 18 Pa.C.S. §3123(1) (forcible compulsion). As noted, immediately prior to trial the Commonwealth moved to amend the information by adding an additional count of rape, 18 Pa.C.S. §3121(2) *(threat* of forcible compulsion), and an additional count of I.D.S.I., 18 Pa.C.S. §3123(2) *(threat* of forcible compulsion). In the course of an unreported proceeding, Judge Smith permitted the amendment.

We begin, as we must, by examining Pa.R.Crim.P. 229. That rule provides:

"The court may allow an information to be amended when there is a defect in form, the description of the offense, the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment the court may grant such postponement of trial or other relief as is necessary in the interests of justice."

The defendant argues that by adding the additional charges of rape by *threat* of forcible compulsion and I.D.S.I. by *threat* of forcible compulsion, Judge Smith violated the letter of the rule that prohibits an amendment that charges "additional or different offense[s]."

To assist in our resolution of the issue we turn for guidance to *Commonwealth v. Grekis,* 411 Pa. Super. 513, 601 A.2d 1284 (1992). In *Grekis,* the defendant was originally charged, inter alia, with three counts of criminal solicitation to commit prostitution. The Commonwealth alleged that the facts underlying the solicitation counts involved the defendant's offer of money to the prostitute to engage in anal intercourse. Pretrial, the Commonwealth was permitted by the trial court to amend the information to add three counts of solicitation to commit involuntary deviate sexual intercourse. The defendant in *Grekis* argued, as does the defendant at bar, that the amendment violated Pa.R.Crim.P. 229, by adding an additional or different offense. Addressing the defendant's argument, the Superior Court, in a definitive exposition on the subject observed pertinently:

"The courts of this Commonwealth have had numerous opportunities to review challenges to amended informations and have developed a standard by which such claims shall be evaluated. The starting point is Pa.R.Crim.P. 229, which provides:

"The court may allow an information to be amended when there is a defect in form, the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

"Appellant argues that by adding the charges of criminal solicitation to commit I.D.S.I. the court violated the letter of Rule 229 which disallows amendments which charge an 'additional or different offense.' To the extent that a substantive change was worked by amending the information to charge an offense carrying a greater potential penalty and whose elements are theoretically different, a literal reading of Rule 229 would appear to argue in appellant's favor. Rule 229 is a starting point only, however, because our courts apply the rule with an eye toward its underlying purposes and with a commitment to do justice rather than be bound by a literal or narrow reading of procedural rules. Therefore, this court had stressed that 'we look more to substantial justice than to technicalities' when reviewing the validity of an amended information. *Commonwealth v. Fuller,* 396 Pa. Super. 605, 616, 579 A.2d 879, 885 (1990). Furthermore, we have noted that: 'The case law sets forth a broader test for propriety of amendments than the plain language of the rule suggests. ...' *Commonwealth v. Mosley,* 401 Pa. Super. 537, 542, 585 A.2d 1057, 1060 (1991) (en banc). The broad scope of the test is defined by the fundamental purposes of Rule 229, which are; 1) to place a defendant on notice of the criminal conduct of which he is accused and, 2) to avoid prejudicing his defense by last minute additions or substantive changes of which he is uninformed. See *Commonwealth v. Mosley, supra* at 541, 585 A.2d at 1059, *citing Commonwealth v. Stanley,* 265 Pa. Super. 194, 212, 401 A.2d 1166, 1175 (1979), *aff'd,* 498 Pa. 326, 446 A.2d 583 (1982). ('The safeguards of the rule are intended to give the defendant adequate preparation time for trial without risk of last-minute additions to the charges which materially alter his defense.')

"In light of these basic principles, the often-articulated guidelines for assessing the propriety of amendments to an information are the following:

"[T]he courts of this Commonwealth employ the test of whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted. *Commonwealth v. Stanley,* 265 Pa. Super. at 212-13, 401 A.2d at 1175." *Grekis, supra* at 520-22, 601 A.2d at 1288-89. (footnote omitted)

Applying these guidelines to the facts at hand, it is obvious that except for the formal distinction between the actual use of force, as originally charged, and the threat to use force, as contained in the amended charges, the same basic elements are involved and the original and amended charges all arose from the same fact pattern. The defendant was clearly placed on notice of the criminal charges and conduct confronting him.

Most importantly, the defendant asserted the defense of *consent* on the part of the victim to all of the acts alleged by the Commonwealth. See notes of testimony, trial at 158-64. During his direct testimony, *supra,* the defendant admitted committing *all* the sexual acts described by the victim but contended that all such acts were consensual.[5]

---

5. In fact, during his testimony, the defendant portrayed the victim as the aggressor and instigator in some of the conduct.

Thus, regardless of whether the letter of Pa.R.Crim.P. 229, was violated, the defendant did not suffer the slightest prejudice by the amendment. In the face of the defendant's defense of consent, the amendment was virtually meaningless and irrelevant. We discern no error.

## (II)

The defendant's second issue on appeal concerns that which he perceives to be a lack of unanimity in the jury's verdicts on the rape and I.D.S.I. charges. He contends:

"(2) In light of the aforementioned amendment, the trial court improperly failed to charge the jury with respect to a specific unanimity instruction where, as here, distinct proof was required to establish affirmative acts as elements of the offenses of rape and involuntary deviate sexual intercourse regarding the theories of forcible compulsion and threat of forcible compulsion that would prevent resistance by a person of reasonable resolution and where, instead, the trial court gave only a general unanimity instruction and failed to prepare and submit to the jury a verdict slip delineating the separate theories of prosecution of rape and involuntary deviate sexual intercourse, but rather, submitted to the jury a verdict slip which did not delineate the separate theories of prosecution for those charges."

It will be remembered that Judge Smith permitted the Commonwealth to amend the information by adding an additional count of rape *(threat* of forcible compulsion), and an additional count of I.D.S.I. *(threat* of forcible compulsion), to the original counts of forcible rape and forcible I.D.S.I. The defendant was thus tried upon *two* counts of rape, each count charging a different

form of conduct, and *two* counts of I.D.S.I., each count also charging a different form of conduct.

The verdict slip utilized by the jury, however, simply contained the words "rape" and "involuntary deviate sexual intercourse." The jury returned a general verdict of "guilty" as to each such charge without specifying the form of conduct found by the jury as constituting the crimes of rape and I.D.S.I. This, the defendant contends, was error.

At argument, the defendant's counsel illustrated the point by suggesting that six jurors could have found the defendant guilty of rape by forcible compulsion and the remaining six could have found him guilty of rape by *threat* of forcible compulsion, thereby denying the defendant a unanimous verdict. While initially appealing, the defendant's argument must ultimately fail.

It is apparent that Judge Smith, in his final charge, instructed the jury upon the two forms of rape (forcible compulsion and threat of forcible compulsion), and I.D.S.I. (forcible compulsion and threat of forcible compulsion). See N.T. at 196-99. Judge Smith also instructed the jury upon the requirement of unanimity of the jury's verdict:

"Your verdict, as we've mentioned to you, except with regard to what you have for lunch, has to be unanimous. This means in order to return a verdict each of you has to agree to it. You have a duty to consult with each other and to deliberate with a view to reaching an agreement, if it can be done without doing any violence to your individual judgment. Each of you must decide the case for him-or herself, but only after there has been an impartial consideration with your fellow jurors." N.T. at 207.

Although, as the defendant notes, we are unaware of the number of jurors who found the defendant guilty of one or the other forms of conduct constituting the crimes of rape and I.D.S.I., in light of Judge Smith's unanimity instruction, we *are* certain that the defendant's jury unanimously found the defendant guilty of the crimes of rape and I.D.S.I.[6]

It is clear beyond peradventure that the legislature has the exclusive power "to pronounce which acts are crimes, to define crimes, and to fix the punishment for all crimes." *Commonwealth v. Church,* 513 Pa. 534, 544, 522 A.2d 30, 35 (1987); *Commonwealth v. Davis,* 421 Pa. Super. 454, 618 A.2d 426 (1992). It is equally clear that in defining a crime the legislature may establish alternative forms of conduct establishing that crime.

This principle is lucidly illustrated in *Commonwealth v. Shannon,* 530 Pa. 279, 608 A.2d 1020 (1992). In *Shannon,* the defendant was found guilty, inter alia, of I.D.S.I., 18 Pa.C.S. §§3123(2) and (5) (both arising out of the same act). The trial court imposed separate sentences upon each of the two I.D.S.I. convictions and the Superior Court affirmed. The Supreme Court, in a plurality opinion, reversed. Justice Zappala, writing for the plurality, made the following pertinent observation:

"The issue of whether or not an illegal sentence has been imposed necessitates the examination of the subject criminal statute. The statute provides:

6. A jury is presumed to follow the court's instructions. *Parker v. Randolph,* 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979); *Commonwealth v. Tilley,* 528 Pa. 125, 595 A.2d 575 (1991); *Commonwealth v. Scarfo,* 416 Pa. Super. 329, 611 A.2d 242 (1992).

*"Section 3123. Involuntary deviate sexual intercourse*

"A person commits a felony of the first degree when he engages in deviate sexual intercourse with another person:

"(1) by forcible compulsion;

"(2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;

"(3) who is unconscious;

"(4) who is so mentally deranged or deficient that such person is incapable of consent; or

"(5) who is less than 16 years of age. 18 Pa.C.S. §3123.

"We are guided in our analysis of this statute by 18 Pa.C.S. §105 which states that criminal statutes shall be construed according to the fair import of their terms.

"The plain language of 18 Pa.C.S. §3123 makes clear that the statute establishes the crime of involuntary deviate sexual intercourse. Within this statutory framework, the elements of the crime set forth the involuntary non-consensual acts which are proscribed. The first two subsections of 18 Pa.C.S. §3123 contemplate the use or threat of force. Subsections (3) and (4) indicate that neither an unconscious nor mentally deficient person may engage voluntarily in deviate sexual intercourse. Similarly, subsection (5) identifies another category of person, a child under the age of 16, as being incapable of voluntarily engaging in such conduct. This conclusion is reached based upon the operative word 'or' in subsection (4).

*"We glean from this examination that the fair import of the statute's terms including its five subsections 18 Pa.C.S. §3123 reveals a design to proscribe the same harm, involuntary deviate sexual intercourse. Therefore each subsection of the statute provides an alternative*

*basis upon which the crime can be established." Shannon, supra* at 286-87, 608 A.2d at 1024. (emphasis added)

Interestingly, the precise issue presented to us by the defendant at bar was addressed by the United States Supreme Court in *Schad v. Arizona,* 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991). Under Arizona law, both premeditated murder and felony murder, although based upon different legal theories, were classified as first degree murder. The defendant was tried for first degree murder and both theories were advanced by the prosecution at trial. The trial court instructed the jury upon both premeditated murder and felony murder. Although the trial court instructed the jury that all 12 jurors had to agree upon a verdict, the court did not instruct the jury that it was required to agree upon a *single theory* of first degree murder. The jury returned a general verdict of guilty of first degree murder. The Arizona Supreme Court affirmed the defendant's conviction. As noted by the United States Supreme Court,

"The Arizona Supreme Court affirmed. 163 Ariz. 411, 788 P.2d 1162 (1989). The court rejected petitioner's contention that the trial court erred in not requiring the jury to agree on a single theory of first-degree murder, explaining:

"In Arizona, first degree murder is only one crime regardless whether it occurs as a premeditated murder or a felony murder. Although a defendant is entitled to a unanimous jury verdict on whether the criminal act charged has been committed, the defendant is not entitled to a unanimous verdict on the precise manner in which the act was committed. *Id.* at 417; 788 P.2d at 1168 (quoting *State v. Encinas,* 132 Ariz. 493, 496, 647 P.2d 624, 627 (1982)). (citations omitted)" *Id.* at

629, 111 S.Ct. at 2496, 115 L.Ed.2d at 564. The court then continued:

"A way of framing the issue is suggested by analogy. Our cases reflect a long-established rule of the criminal law that an indictment need not specify which overt act, among several named, was the means by which a crime was committed. In *Andersen v. United States,* 170 U.S. 481, 18 S.Ct 689, 42 L.Ed. 1116 (1898), for example, we sustained a murder conviction against the challenge that the indictment on which the verdict was returned was duplicitous in charging that death occurred through both shooting and drowning. In holding that 'the government was not required to make the charge in the alternative,' *id.* at 504, 42 L.Ed. 1116, 18 S.Ct. 689, we explained that it was immaterial whether death was caused by one means or the other. Cf. *Borum v. United States,* 284 U.S. 596, 52 S.Ct. 205, 76 L.Ed. 513 (1932) (upholding the murder conviction of three co-defendants under a count that failed to specify which of the three did the actual killing); *St. Clair v. United States,* 154 U.S. 134, 145, 14 S.Ct. 1002, 38 L.Ed. 936 (1894). This fundamental proposition is embodied in Federal Rule of Criminal Procedure 7(c)(1), which provides that '[i]t may be alleged in a single count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means.'

"We have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone. In these cases, as in litigation generally, 'different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement

on the preliminary factual issues which underlie the verdict.' *McKoy v. North Carolina,* 494 U.S. 433, 449, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990). (Blackmun, J., concurring) (footnotes omitted)

"The alternatives in the cases cited went, of course, to possibilities for proving the requisite actus reus, while the present case involves a general verdict predicated on the possibility of combining findings of what can best be described as alternative mental states, the one being premeditation, the other the intent required for murder combined with the commission of an independently culpable felony. See *State v. Serna,* 69 Ariz. 181, 188, 211 P.2d 455, 459 (1949) (in Arizona, the attempt to commit a robbery is 'the legal equivalent of ... deliberation, premeditation, and design'). We see no reason, however, why the rule that the jury need not agree as to mere means of satisfying the actus reus element of an offense should not apply equally to alternative means of satisfying the element of mens rea." *Id.* at 632, 111 S.Ct. at 2497, 115 L.Ed.2d at 565.[7]

---

7. We are, of course, aware that *Schad* is a plurality opinion. Justice Souter wrote, inter alia, Part II of the lead opinion. It is Part II with which we are here concerned. Three justices joined Justice Souter in Part II of *Schad.* Justice Scalia concurred, inter alia, in Part II of the plurality opinion. In *Nichols v. United States,* 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994), the court observed:

"In *Marks v. United States,* 430 U.S. 188 (1977), we stated that '[w]hen a fragmented court decides a case and no single rationale explaining the result enjoys the assent of five justices, the holding of the court may be viewed as that position taken by those members who concurred in the judgments on the narrowest grounds. ...' *Id.* at 193, quoting *Gregg v. Georgia,* 428 U.S. 153, 169 n.15 (1976)." *Id.* at 114 S.Ct. at 1926, 128 L.Ed.2d at 753. In his concurrence, Justice Scalia wrote:

Thus, it is seen that the United States Supreme Court has *never* required unanimity of jury's verdict with respect to the actus reus ("wrongful deed") as the means of committing a single crime.[8] The legislature of Pennsylvania has determined that the single crime of rape can be committed by either forcible compulsion or threat of forcible compulsion as can the single crime of I.D.S.I. In the light of *Schad,* we cannot find that the defendant's jury was required to agree upon the *means* by which the defendant committed those crimes. In the language of *Schad,* the defendant's jury unanimously agreed "upon the bottom line:" that the defendant committed the crimes of rape and I.D.S.I. And see *United States*

---

"As the plurality observes, it has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission. See *e.g., People v. Sullivan,* 173 N.Y. 122, 65 N.E. 989 (1903); cf. H. Joyce, Indictments §§561-562, pp. 654-657 (2d ed. 1924); W. Clark, Criminal Procedure §§99-103, pp. 322-330 (2d ed. 1918); 1 J. Bishop, Criminal Procedure §§434-438, pp. 261-265 (2d ed. 1872). That rule is not only constitutional, it is probably indispensable in a system that requires a unanimous jury verdict to convict. When a woman's charred body has been found in a burned house, and there is ample evidence that the defendant set out to kill her, it would be absurd to set him free because six jurors believe he strangled her to death (and caused the fire accidentally in his hasty escape), while six others believe he left her unconscious and set the fire to kill her." *Id.* at 501 U.S. 649, 111 S.Ct. at 2506, 115 L.Ed.2d at 577. It is that single principle about which Justice Scalia writes that we apply here. He is in obvious agreement with the plurality with respect to that principle. Accordingly, in our view, and applying the test enunciated in *Nichols, supra,* it can be said, at the very least, that the principle espoused by the plurality that we apply here has enlisted a majority of the court.

8. In *Schad,* the court went further and held that although the alternative crimes (first degree murder and felony murder) each required a different mens rea, unanimity was still not required. See excerpt quoted, *supra.*

*v. Sanderson,* 966 F.2d 184 (6th Cir. 1992) (defendant charged with theft; government presented multiple theories of theft; court instructed on multiple theories; jury returned a general verdict of guilty of theft; *Schad* applied and conviction affirmed). In *Contreras v. State,* 838 S.W.2d 594 (Tex.Crim.App. 1992), the defendant was tried, inter alia, upon a single charge of burglary. The indictment alleged in separate paragraphs that the defendant entered the subject house with the intent to commit (1) sexual assault, (2) or theft from "X" or (3) theft from "Y." The trial court submitted the case to the jury upon each of the three "intents" but did not require the jurors to agree upon a single intent in order to return a guilty verdict. The jury returned a general verdict of guilty of burglary. On appeal, the defendant argued that it was improper for the trial court to permit conviction without unanimous agreement upon a single state theory. Summarily rejecting the defendant's argument, the court held:

"Both the United States Supreme Court and the Court of Criminal Appeals recently held that 'there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.' *Schad v. Arizona,* 501 U.S. 624, 111 S.Ct. 2491, 2497, 115 L.Ed.2d 555 (1991); *Kitchens v. State,* 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). The law requires a unanimous verdict. Tex. Code Crim. Proc. Ann. art. 36.29 (Vernon Supp. 1992); *Kitchens,* 823 S.W.2d at 258. The law does not require that members of the jury unanimously agree upon the facts supporting the verdict. Appellant's fifteenth point of error is overruled." *Contreras, supra* at 605. And see *People v. Diaz,* 614 N.E.2d 268 (Ill.App. 1993) (defendant tried and jury instructed upon two alternative theories of aggravated battery; jury returned general verdict of guilty; *held:*

"the jury need only be unanimous with respect to the ultimate question of defendant's guilt with respect to the ultimate question of defendant's guilt or innocence of the crime charged, and unanimity is not required concerning alternate ways, in which the crime can be committed." *Id.* at 271, citing *People v. Trairs,* 170 Ill.App.3d 873, 121 Ill.Dec. 830, 525 N.E.2d 1137 (1988)). We discern no error.[9]

### (III)

As his third issue on appeal, the defendant contends that:

"(3) Trial counsel was ineffective for failing to request a specific unanimity instruction for the separate theories of prosecution of rape, 18 Pa.C.S. §§3121(1) and (2) and involuntary deviate sexual intercourse, 18 Pa.C.S. §§3123(1) and (2) and was further ineffective for not objecting to the trial court's failure to give a specific unanimity instruction with respect to those separate theories of prosecution."

In view of our disposition of the defendant's second issue on appeal in subpart (II), *supra,* and our finding therein that a unanimity instruction upon the Commonwealth's "separate theories" was not required, trial counsel cannot be found to have been ineffective for failing to request such instruction or failing to object to Judge Smith's failure to give such instruction. Counsel is not expected to pursue meritless claims or perform futile acts. *Commonwealth v. Stokes,* 532 Pa. 242, 615 A.2d 704 (1992); *Commonwealth v. Clark,* 430 Pa. Super. 270, 634 A.2d 254 (1993). The defendant's contrary argument is meritless.

---

9. We also note that 18 Pa.C.S. §§3121(1) and (2) are each graded as felonies of the first degree as are 18 Pa.C.S. §§3123(l) and (2).

(IV)

"(4) The trial court erred in failing to charge the jury on the defense of consent and, specifically, in failing to instruct the jury that the burden was on the Commonwealth to prove beyond a reasonable doubt that the alleged victim in this case did not give her consent."

It is quite correct to observe, as does the defendant, that Judge Smith specifically failed to instruct the jury in accordance with Pa.S.S.J.I. (Crim.) §8.311B. The latter instruction is appropriate when consent of the complainant is advanced as a defense by a defendant as in the case at bar. Nonetheless, when reviewing a court's final instructions to a jury, we must read them as a whole and in their entirety, *Commonwealth v. Stokes, supra,* and the *general effect* of those instructions is controlling. *Commonwealth v. Myers,* 424 Pa. Super. 1, 621 A.2d 1009 (1993). We have viewed Judge Smith's final instructions to the defendant's jury in light of these principles and find that he more than adequately conveyed to the jury the principle that the burden of proof upon the Commonwealth included the requirement that it prove beyond a reasonable doubt that the defendant committed the acts necessary to establish rape and I.D.S.I. without the victim's consent. We quote portions of Judge Smith's instructions below to support our finding and we emphasize some of his language:

*"A man commits a rape if he has sexual intercourse with a female who is not his spouse by forcible compulsion or by threat of forcible compulsion that would prevent resistance by a reasonably resolute female. The force used or threatened by the man can be physical force or violence, but it doesn't have to be. It is legally possible for a man to commit a rape by using or threat-*

*ening psychological, moral or intellectual force of some kind.*

"In order to find this defendant guilty, you must be satisfied that three elements have been proven beyond a reasonable doubt. *One, that this defendant compelled Miss Woodring to have sexual intercourse with him against her will. He compelled her to have sexual intercourse against her will.*

"Secondly, that the defendant did so by force or the threat thereof, the threat being the kind that would have prevented a reasonably resolute female from resisting if she were in the same situation as Miss Woodring.

*"You've got to find the compelling, the intercourse, against her will, done by force or the threat of it,* and lastly Miss Woodring is not the defendant's spouse. I guess we can pretty much dismiss that, since they're both agreed there. Also the sexual intercourse is agreed by both.

"What you have to determine is whether or not that sexual intercourse was compelled and by force or the threat of. That's how you use the definitions here, and I think that is indeed how counsel guided you in their closings.

"A man has sexual intercourse with a female if he penetrates her female sexual organ with his penis to the slightest degree. He does not have to emit any semen. A man also has sexual intercourse with a female if he uses his penis to have intercourse with her mouth or anus. At least slight penetration of the mouth or anus, but no emission, as such, is required.

"As I said before, the force used or threatened can be, but it doesn't have to be, physical force or violence.

A man can commit rape by using or threatening psychological, moral or intellectual force. ...

"A man's words or conduct towards a female cannot amount to the use of force or a threat of psychological moral or intellectual force unless they wrongfully impair her freedom of will and her ability to choose whether to have sex or not.

"There is no requirement that the force or the threat thereof is one likely to cause serious bodily injury or that the woman put up a fight and physically resist. *However, you should consider the evidence about the kind and amount of force and the extent of it, along with other evidence of all relevant facts and circumstances when deciding whether you are satisfied that this defendant compelled Miss Woodring to have sexual intercourse with him against her will, and that he did so by force or threat thereof.*

"Involuntary deviate sexual intercourse again, or as you would imagine it to be, there are certain two elements that have to be shown to have occurred. *Again, that the defendant compelled Miss Woodring to have deviate sexual intercourse with him against her will, that's number one.*

*"And, two, that this was accomplished by force or the threat of it.* And, again, that force or the threat being the kind which would prevent a reasonably resolute woman from resisting in the same condition as this woman." N.T. at 196-99. (emphasis added)

After instructing the jury upon the elements of indecent assault and simple assault, Judge Smith continued his instructions upon the use of force and the lack of consent with respect to the crimes of rape and I.D.S.I.:

"Counsel have asked me to share certain other things with you here which I will do. Certainly, as you've

heard, you can't convict anybody based on suspicion or conjecture. The force or threat of force necessarily does not include the force inherent in the act of penetration, but rather the force actually used or threatened to overcome or prevent resistance by the victim. ...

*"The alleged victim of a sexual assault need not resist the actor in a sexual offense prosecution provided, however, that nothing should in any way prohibit a defendant from introducing evidence that there was consensual activity between the two parties here involved.*

*"The force necessary to support a conviction for rape need only be such as to establish a lack of consent and to induce a woman to submit without additional resistance.*

"It is not necessary that the victim be beaten, that they cry, that they become hysterical or that she be threatened by a weapon for the crime of rape to occur.

*"The fact that a victim ultimately decides that it is pointless to physically resist a defendant after he has forced her to submit to a rape does not establish that she gave her consent to the act of intercourse.*

"It is not the absence of resistance in the face of actual or threatened force that would constitute a victim's consent to carnal acts. Active opposition is not a prerequisite to finding lack of consent. Outcry, struggle and fresh complaint need not be proven to find that the rape occurred. *The victim's testimony concerning her fear and defendant's forceful treatment of her is sufficient to find that a victim has not consented to an act of sexual intercourse.* "[10] N.T. at 201-203. (emphasis added)

---

10. After the defendant's jury had deliberated for approximately two hours, they returned to the courtroom and asked Judge Smith to reinstruct them upon the elements of the crimes with which the

Again, although Judge Smith did not instruct the jury in accordance with Pa.S.S.J.I. (Crim.) §8.311B, he made it quite clear to the jury that in order to prevail, the Commonwealth was required to prove that the acts giving rise to the charges of rape and I.D.S.I. were indeed non-consensual.[11] Again, we find no error.

---

defendant was charged. Judge Smith responded in the following language:

"All right. *First we're talking about rape. Defendant compelled Miss Woodring to have sex with him against her will.* Now, compelled and against her will sound a little redundant, but on the other hand it's there for a reason, and I guess one kind of helps to define the other.

"In any event, *defendant compelled Miss Woodring to have sexual intercourse with him against her will. And, two, this was accomplished by force or the threat of it,* and that this was not his wife.

"Let me go a little bit further when I get into force or the threat of it. Force, obviously we've mentioned before. Let me go to the threat of force. The threat being the kind of threat which would have prevented a reasonably resolute female from resisting if she were in the same situation. That's what two is. Force or the threat of force, direct or implied. *Defendant compelled, against her will,* not his wife, force or threat of force.

"And the same really, just two elements here when we talk about involuntary deviate. Defendant again *compelled Miss Woodring to have deviate sexual intercourse with him against her will.* It's non-consensual. And, two, that the defendant did so by force or the threat of it, which is defined as I did for you a moment ago in terms of that reasonably resolute female that they mention here." N.T. at 210-11. (emphasis added)

11. Trial counsel presented Judge Smith a proposed point for charge on the issue of consent. The proposed point tracks Pa.S.S.J.I. (Crim.) §8.311. Apparently, Judge Smith refused to charge the jury in the language of the proposed point as he did not so charge. Trial counsel did not object. When asked the reason he failed to object, trial counsel testified at the evidentiary hearing convened to take testimony on the question of trial counsel's ineffectiveness as follows:

(V)

As his fifth and final issue on appeal, the defendant contends that:

"(5) Trial counsel was ineffective for failing to request that the trial court instruct the jury on the theory of consent and, specifically, that the Commonwealth had the burden of proving beyond a reasonable doubt that the alleged victim did not consent and was further ineffective for not objecting to the trial court's failure to give such an instruction."

The first assertion of ineffectiveness is based on a misstatement of fact. Trial counsel did indeed request that the trial court instruct the jury on the theory of consent, see proposed point no. 12,[12] and the proposed point places the burden of proving the victim's lack of the victim's consent squarely upon the Common-

---

"BY MR. DONATONI:

"Q. Mr. Sanchez, you made no objection to Judge Smith not giving your proposed point for charge?

"A. Given that specific language on the requested point for charge —.

"THE COURT: He stated, you did not object?

"MR. SANCHEZ: I did not object, no. I felt, at the time, that he had adequately covered it.

"THE COURT: You were satisfied with the charge at that point?

"THE WITNESS: Yes." Notes of Testimony, evidentiary hearing, 2/4/93, at 28.

12. Proposed point no. 12, as requested by trial counsel, is as follows:

"(12) The Commonwealth must prove beyond a reasonable doubt that the alleged victim did not give consent. The consent of a woman to sexual intercourse naturally negatives an element of the offense of rape. If you find that the Commonwealth failed to prove beyond a reasonable doubt that the alleged victim did not give consent, then you must find the defendant not guilty. See SSJI 8.311."

wealth. The only question remaining is whether trial counsel was ineffective in not objecting to Judge Smith's failure to read proposed point no. 12 to the jury. We think he was not.

Although the defendant fails to tell us why he believes trial counsel was ineffective in failing to object to Judge Smith's failure or refusal to instruct the jury in the language of the defendant's proposed point no. 12, presumably it is for the reason that in the usual case, the failure to so object results in a waiver of the issue on appeal. *Commonwealth v. Knight,* 416 Pa. Super. 586, 611 A.2d 1199 (1992); *Commonwealth v. Pigg,* 391 Pa. Super. 418, 571 A.2d 438 (1990). However, the issue here is presented to the Superior Court in terms of the ineffective assistance of counsel. In such circumstance, the Superior Court has held that it *will* review the substantive issue on appeal. *Commonwealth v. Knight, supra* at 591, 611 A.2d at 1201-1202; *Commonwealth v. Hodge,* 270 Pa. Super. 232, 240 n.8, 411 A.2d 503, 507 n.8 (1979).

One of the three prongs of the test by which we evaluate a claim of ineffective assistance of counsel requires a defendant to establish how counsel's omission prejudiced him. *Commonwealth v. Jones,* 431 Pa. Super. 475, 483, 636 A.2d 1184, 1188 (1994) (quoting *Commonwealth v. Durst,* 522 Pa. 2, 4-5, 559 A.2d 504, 505 (1989)). As the issue has been preserved for review, the defendant has suffered no prejudice.

Finally, we determined in subpart (IV), *supra,* that Judge Smith adequately instructed the jury on the subject of consent and thus, an objection was not warranted.

In sum, we find that all the issues presented by the defendant on appeal are meritless.